Eugenia Thorton and Donovan
F. JAGGER, Plaintiffs,

v.

Donald V. Schiavello and Bernadette
SCHIAVELLO, Defendants.

C.A. No. K11C–02–031 WLW.

Superior Court of Delaware,
Kent County.

Submitted: May 8, 2014.
Decided: June 5, 2014.

Sean M. Lynn, Esquire of Baird Mandalas & Brockstedt, Dover, Delaware; attorney for the Plaintiffs.

Donald V. and Bernadette Schiavello, pro se.

## OPINION AND ORDER

Upon Inquisition Hearing.

WITHAM, R.J.

### *INTRODUCTION*

Plaintiffs Eugenia Thorton [1] (hereinafter "Thorton") and Donald Jagger (hereinafter "Jagger," collectively "Plaintiffs") received an entry of default judgment against Defendants Donald Schiavello (hereinafter "Donald") and Bernadette Schiavello (hereinafter "Bernadette," collectively "Defendants"). The Court subsequently held an inquisition hearing on two separate dates to determine the amount of damages. After careful consideration of the evidence presented, the Court has set forth its findings on damages below.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Due to the default judgment entered against Defendants, the sole issue in this case is the amount of damages for which Defendants are liable.

Put simply, the parties in this case are neighbors who had an acrimonious relationship towards each other that arose quickly after Plaintiffs moved into their home in Frederica in 2000. Both Thorton and Jagger have military backgrounds. Jagger suffers from a debilitating mental illness pre-dating the events in question that requires Thorton to essentially act as his caretaker. Soon after Plaintiffs moved in next door, Defendants engaged in a pattern of verbal abuse and confrontational behavior-often of the lewd and vulgar variety, but also occasionally threats of violence-against Thorton, her husband Jagger, and various guests Plaintiffs would have at their home. This behavior reached the point where Thorton felt compelled to keep detailed notes of every instance of Defendants' behavior, and eventually Thorton began using cameras to record the incidents.

The relationship between the neighbors continued to grow worse, particularly from approximately 2008 or 2009 to the present day. It appears, at some point during this time, that the parties disputed a boundary line between their properties. At another point, Defendant Bernadette was arrested for menacing for a confrontation she had with Thorton. Thorton also began suffering stress as a result of Defendants' conduct, and in September 2011 suffered a stress-induced cardiac attack.

Finally, on February 16, 2011, Plaintiffs filed a complaint against Defendants alleging claims of: assault; intentional infliction of emotional distress (hereinafter "IIED"); trespass; continuing trespass; nuisance

---

1. Thorton's name has been incorrectly spelled as "Thornton" in the case caption and in the majority of documents entered into evidence.

and private nuisance; and defamation. Defendants subsequently filed counterclaims that essentially mirrored Plaintiffs' claims. Defendants were initially represented by counsel, but their attorney withdrew his appearance in June of 2012. Discovery proceeded without participation by Defendants, and Plaintiffs filed motions for sanctions against Defendants. On December 14, 2012 the Court granted Plaintiffs' second motion for sanctions, dismissed Defendants' counterclaims with prejudice, and entered a default judgment against Defendants on all of Plaintiffs' claims.[2]

An inquisition hearing was held to determine damages on November 19, 2013. Defendants participated in the hearing *pro se*. Plaintiffs presented the expert testimony of two experts: Dr. Joseph Zingaro (hereinafter "Dr. Zingaro") and Dr. Harjinder Grewal (hereinafter "Dr. Grewal"). Dr. Zingaro is a licensed psychologist who performed examinations on Thorton. Dr. Zingaro described Thorton's military background and the examinations he conducted, and testified that based on those examinations, Thorton suffers from posttraumatic stress disorder (hereinafter "PTSD"). Dr. Zingaro opined that Thorton's PTSD was caused by her stressful relationship with Defendants, and not by her experiences in the military. Dr. Zingaro stated that if left untreated, Thorton's PTSD would progress to a more chronic and difficult-to-treat condition.

Dr. Grewal is Thorton's cardiologist who has treated Thorton for several years. Dr. Grewal testified that in 2010, a stress test revealed that Thorton's heart was in excellent condition. Dr. Grewal testified that in September 2011 Thorton received a cardiac catheterization test which revealed that Thorton had suffered heart attack damage as a result of Takotsubo Syndrome, a heart condition caused by extreme degrees of emotional stress. Dr. Grewal testified that Takotsubo Syndrome could be caused by, *inter alia*, an extremely emotional altercation with another human being, and can lead to congestive heart failure, cardiac arrest, and possibly death. When asked on cross-examination by Defendant Donald, Dr. Grewal could not testify with certainty whether the stressor of Thorton's Takotsubo Syndrome was Thorton's quarrel with Defendants, or whether it was stress caused from dealing with her husband's dementia.

The inquisition hearing was continued to May 8, 2014. Thorton testified at the hearing and at great length described her background, her husband's condition, her own health issues, particularly her Takotsubo Syndrome attack in September 2011, and her relationship with Defendants, including the records and logs she kept of Defendants' conduct. Thorton testified she did not know why Defendants acted the way they did towards Thorton and her husband. Plaintiffs played a professionally edited, twenty-minute video of "highlights" of instances of verbal abuse and other conduct by Defendants that occurred from July 2, 2010 through May 27, 2013. The video portrayed both Defendants engaging in conduct that largely corroborated Thorton's testimony. Several incidents of arguments over a property line were also depicted in the video, as was an incident in which Donald allegedly followed Plaintiffs whenever Plaintiffs drove their vehicle. Thorton testified that incidents such as those portrayed in the video occur on a frequent basis, particularly every time Plaintiffs go outside their home, and stated that the incidents have grown worse since

---

**2.** It is possible that if counsel had remained in the case for Defendants that the true dispute would narrow, given proper motion practice. Thus the extensive number of claims might have been reduced.

this action was initiated. Thorton further testified that one of the incidents captured on video resulted in Bernadette's arrest for menacing.

On the second day of the hearing, Plaintiffs introduced into evidence two lists, generated by Thorton, purporting to list all medical expenses and non-medical expenses, respectively, caused by Defendants' conduct and incurred throughout this litigation. Both lists were revised versions of exhibits that had been previously submitted. It should be noted that there was no independent evidence whatsoever, such as invoices or medical bills, submitted in support of any of these items. According to the revised exhibit purporting to list medical expenses, the grand total of Plaintiffs' medical expenses is $23,721.37.

According to the original exhibit submitted to the Court, the total of Plaintiffs' non-medical expenses, including costs incurred as a result of litigating the inquisition hearing, was $125,480.58. On the second day of the inquisition hearing, Plaintiffs admitted a revised exhibit, according to which the total was $103,551.77. During her testimony, Thorton stated that the total of these damages was $121,000.35, and further testified that $40,000 of that amount was an estimated cost for work that is scheduled to commence this summer.

### *STANDARD OF REVIEW*

■ Under Rule 55(b)(2) of the Superior Court Rules of Civil Procedure, when deemed necessary and proper to do so, the Court may conduct an inquisition hearing if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment of evidence or to make an investigation of any other matter...." [3] Typically, the sole focus of inquisition hearings is the amount of damages owed to the plaintiff, which is determined by the trial court judge.[4] The Court's findings on damages are based on a preponderance of the evidence.[5] "Preponderance of the evidence" simply means the side on which the greater weight of the evidence is found.[6]

### *DISCUSSION*

■ Before delving into the determination of damages which Plaintiffs can recover, several observations must first be made. First, the exhibits offered by Plaintiffs on damages delineate between expenses covered by insurance and expenses that Plaintiffs paid out-of-pocket. Under the collateral source rule, this distinction is irrelevant and does not affect this Court's determination of damages.[7] It should be noted that these exhibits appear to have been personally compiled and maintained by Thorton and are rife with spelling and chronological errors, including misuse of the terms "plaintiffs" and "defendants." These errors, along with the types of damages stated in the exhibits (as will be evident *infra*), indicate to the Court that Plaintiffs' counsel had not properly examined or "scrubbed" these exhibits prior to their admission.

**3.** Del.Super. Ct. R. 55(b)(2).

**4.** *See W & G Wilford Assocs., L.P. v. Jeffcor, Inc.,* 1991 WL 113353, at *1–4 (Del.Super. Apr. 12, 1991); *Williams v. County Bus Serv.,* 1990 WL 1242521, at *1 (Del.Super. Apr. 30, 1990).

**5.** *Williams,* 1990 WL 1242521, at *1.

**6.** *Taylor v. State,* 748 A.2d 914, 2000 WL 313501, at *2 (Del. Feb. 23, 2000) (TABLE) (citing *Reynolds v. Reynolds,* 237 A.2d 708, 711 (Del.1967)).

**7.** *See generally Yarrington v. Thornburg,* 205 A.2d 1, 2–3 (Del.1964).

Second, there is conflicting evidence on the total amount of non-medical damages that Plaintiffs seek to recover—the original exhibit, the revised exhibit, and Thorton's testimony on the second day of the hearing. Because the revised exhibit was offered as a replacement of the original one, and because Thorton's testimony appears to contradict or be inconsistent with the amounts stated in the revised exhibit, the Court shall base its determination on the revised exhibit.[8]

Third, the Court notes that under Rule 55(b)(2), the Court may investigate other matters that arise at the inquisition hearing besides damages. The Court finds it necessary and proper to do so in this case, because of the unique nature of the claims asserted by Plaintiffs. This is not a relatively straightforward case such as an action to recover unpaid rent[9] or a negligence claim based on a motor vehicle accident.[10] Rather, Plaintiffs' case involves claims based on Plaintiffs' rights as property owners (trespass, continuing trespass, and nuisance) and claims based on more intangible rights, such as personal dignity and privacy (assault, IIED, and defamation).

■ Based on the evidence presented at the hearing, including the testimony of Dr. Zingaro and Dr. Grewal, the largely uncontradicted testimony of Thorton, and the video portraying Defendants' conduct over the course of a two-and-a-half year period, the Court finds that, for the limited purposes of this proceeding, Plaintiffs have established by a preponderance of the evidence a right to recovery for their claims for trespass, nuisance[11] and IIED. The video portrayed at least one instance of assault occurring on August 5, 2010 in which Bernadette confronted Thorton with lewd insults and waved her hands in front of Thorton's face in a threatening manner despite Thorton's protests to stop.[12] Combined with Thorton's testimony, the Court finds that this establishes a right to damages for assault as well.[13]

■ As to Plaintiffs' other claims, the Court finds that there was insufficient evidence presented at the hearing to establish damages for either continuing trespass or defamation. As to continuing trespass, such a claim occurs when the defendant tortiously places or erects a structure or other thing on the land of another person, and constitutes a trespass for the entire

**8.** A revised exhibit was also offered for Plaintiffs' medical expenses. For the same reasons, the Court shall use this exhibit in determining what medical expenses Plaintiffs can recover.

**9.** *W & G Wilford Assocs.*, 1991 WL 113353, at *1.

**10.** *Williams*, 1990 WL 1242521, at *1.

**11.** Plaintiffs' complaint references "nuisance and private nuisance." Practically speaking, Plaintiffs only pleaded (and the evidence presented only established) a claim for private nuisance—*i.e.*, a nontrespassory invasion of another's interest in the private use and enjoyment of their land. *Patton v. Simone*, 626 A.2d 844, 855 (Del.Super.1992) (citing Restatement (Second) of Torts § 821D).

**12.** The elements of the tort of assault are met when the tortfeasor acts with the intent to imminent apprehension of harmful or offensive contact, and the plaintiff is put in such imminent apprehension. *Tilghman v. Del. State Univ.*, 2012 WL 3860825, at *5 (Del.Super. Aug. 15, 2012) (citing Restatement (Second) of Torts § 21 (1965)). The incident portrayed in the video, considered along with Thorton's testimony, satisfies these elements.

**13.** Whether Plaintiffs have in fact proved any recoverable damages is a different issue entirely. As explained *infra*, there is insufficient proof of many of the expenses Plaintiffs seek to recover.

length of time such thing is wrongfully on that land.[14] Plaintiffs' complaint alleges continuing trespass from the installation of blacktop on Plaintiffs' property. Evidence presented at the hearing, however, established that the continuing trespass claim arises from a boundary dispute between the parties. It is not the proper role of this Court, in a determination following default judgment and an inquisition hearing meant to solely focus on the issue of damages, to resolve property disputes or issue a declaratory judgment on the boundary lines of Plaintiffs' and Defendants' property. The Court shall not consider any items of damages relating to the continuing trespass claim.

■ As to Plaintiffs' defamation claim, Plaintiffs' counsel conceded on the second day of the hearing that defamation was the "weakest of all the claims" raised by Plaintiffs. The only comments by Defendants testified to by Thorton and captured on video were oral insults made while Plaintiffs had guests on their property. Oral defamation, otherwise known as "slander," is only actionable when a plaintiff can show special damages, unless the slander fits into one of four "slander *per se*" categories where special damages need not be proved.[15] Examples of special damages resulting from slander include material

harm, such as being fired from one's job as a result of the slanderous statement.[16] Plaintiffs have not established any of the four categories of slander *per se* or special damages. Accordingly, Plaintiffs shall not be permitted to recover any damages relating to their defamation claim.

Finally, the Court is mindful of the applicable statutes of limitations in determining Plaintiffs' recoverable damages. Plaintiffs filed their complaint on February 16, 2011. Plaintiffs' IIED and assault claims are subject to Delaware's two-year statute of limitations.[17] Plaintiffs' trespass claims are subject to a three-year statute of limitations.[18] It appears unclear under Delaware law whether the two-year or three-year statute of limitations applies to Plaintiffs' private nuisance claims.[19] Given the high frequency of Defendants' conduct that constitutes the private nuisance and the limited scope of these proceedings, the Court finds no need to resolve the question of what statute of limitations applies to private nuisances.

### Medical expenses

Plaintiffs seek $23,721.37 in medical expenses. The testimony of Dr. Zingaro and Dr. Grewal is helpful to the Court in determining which medical expenses are recoverable by Plaintiffs. However, no actual

---

**14.** *Gordon v. Nat'l R.R. Passenger Corp.,* 1997 WL 298320, at *8 (Del.Ch. Mar. 19, 1997) (citing Restatement (Second) of Torts § 161 cmt. b (1965)).

**15.** *Spence v. Funk,* 396 A.2d 967, 970 (Del. 1978) (citations omitted). The four categories include statements which: (1) malign one's trade or profession; (2) impute a crime; (3) imply a loathsome disease; and (4) impute unchastity to a woman. *Id.*

**16.** *Danias v. Fakis,* 261 A.2d 529, 531 (Del.Super.1969).

**17.** 10 *Del. C.* § 8119; *see also Lankford v. Scala,* 1995 WL 156220, at *5 (Del.Super.

Feb. 28, 1995); *Pagano v. Hadley,* 553 F.Supp. 171, 177 (D.Del.1982).

**18.** 10 *Del. C.* § 8106(a).

**19.** Other states differ in what statute of limitations applies to private nuisances. *Compare Sinotte v. City of Waterbury,* 121 Conn.App. 420, 995 A.2d 131, 140 (2010) (applying two-year statute of limitations to private nuisance claim); *Beck Development Co. v. Southern Pacific Transp. Co.,* 44 Cal.App.4th 1160, 1216, 52 Cal.Rptr.2d 518 (Cal.Ct.App.1996) (holding that three-year statute of limitations applies to private nuisances).

medical bills or copies thereof have been provided to the Court to assist it in its determination. The only exhibit pertaining to medical bills, besides the experts' reports, is a spreadsheet made by Thorton herself purporting to log the date each expense was incurred and the amount of each expense. Normally, such subjective evidence, if not corroborated, would be impermissible as proof of damages. In this case, based on Defendants' decision to not challenge most of these expenses, and based on the expert testimony presented by Plaintiffs, the Court finds that Plaintiffs have met their burden in establishing some of the medical damages they seek to recover.[20]

The Court shall now proceed to analyze each item or set of items classified as medical expenses in the order they appear in the revised exhibit, and determine what amount, if any, is recoverable:

■ (1) Cardiac care due to complaints of chest pain, dated May 16, 2011: this cost is stated twice at the top of the first page of the revised medical expenses exhibit, and totals $197.12. This amount is not recoverable. When an expert offers a medical opinion it should be stated in terms of "a reasonable medical probability" or "a reasonable medical certainty."[21] Dr. Grewal expressly stated that he could not testify with certainty whether Thorton's Takotsubo Syndrome was caused by stress stemming from the feud with Defendants, or by stress relating to the condition of Thorton's husband. This falls short of the required standard for expert testimony. Without a link between Defendants' conduct and Thorton's Takotsubo Syndrome, the Court cannot award damages arising from that condition.

(2) Cymbalta for Thorton's depression and stress. The dates for this item of damages range from November 18, 2008 to March 11, 2012. Dr. Zingaro's testimony and report establishes that Dr. Zingaro interviewed Thorton's therapist and Thorton herself, and concluded, within a reasonable medical certainty, that Thorton's PTSD and related symptoms were caused by Defendants' conduct and not by Thorton's military experiences. Because this appears to be an expense relating to that condition, Plaintiffs shall recover it. However, since this claim is most accurately traced to Plaintiffs' IIED claim, the two-year statute of limitations applies. Accordingly, Plaintiffs cannot recover the cost of any Cymbalta prescribed before February 16, 2009. Based on Plaintiffs' exhibits, Plaintiffs can recover the cost of Cymbalta prescribed on: February 24, 2009; March 31, 2009; April 29, 2009; June 9, 2009; June 25, 2009; October 7, 2009; November 3, 2009; December 29, 2009; May 16, 2010; July 6, 2010; November 11, 2010; May 5, 2011; May 31, 2011; September 30, 2011; and March 11, 2012. The total cost of recoverable damages for this expense comes to $3,881.59.

(3) From the bottom of page one to the bottom of page five, Plaintiffs' revised exhibit lists individual mental health counsel-

---

**20.** The Court can only make a determination on damages following an inquisition hearing based on the evidence presented. The Court could have just as easily found that the failure to provide any bill or record corroborating Thorton's spreadsheets precluded recovery entirely; it is only due to the testimony of Plaintiffs' experts, particularly Dr. Zingaro, that Plaintiffs may still recover some of these expenses. This practice should not be followed in future inquisition hearings, because more substantiation will typically be needed. Further, Plaintiffs are bound to the amounts stated in their revised exhibits, even if they are mistaken, as no other evidence of their amount was presented.

**21.** *O'Riley v. Rogers,* 69 A.3d 1007, 1011 (Del. 2013) (citing *Floray v. State,* 720 A.2d 1132, 1136 (Del.1998)).

ing sessions with Thorton's therapist as recoverable expenses. Each session is listed as featuring discussion of Defendants' conduct. These sessions range from December 31, 2009 to October 21, 2013. For the same reasons as above, based on Dr. Zingaro's testimony and report, this expense is recoverable as a medical expense relating to Thorton's PTSD. Plaintiffs can recover the cost of all of Thorton's mental health counseling sessions listed on pages one through five of Plaintiffs' revised exhibit. The total cost of recoverable damages for this expense comes to $8,185.98.

(4) On pages six and seven of Plaintiffs' revised medical expenses exhibit, Plaintiffs list a variety of expenses such as cardiac care and prescriptions relating to Thorton's Takotsubo Syndrome. As noted *supra*, Dr. Grewal could not testify within a reasonable medical probability or certainty that Thorton's Takotsubo Syndrome was triggered by stress arising from Thorton's interactions with Defendants, or from Thorton's concern over her husband Jagger's own medical condition. Accordingly, none of these damages are recoverable.

(5) The total amount of Plaintiffs' recoverable medical expenses, comprised of Thorton's Cymbalta expenses incurred within the statute of limitations period and Thorton's mental health counseling, is $12,067.57.

### Other expenses

Plaintiffs' other revised exhibit lists a variety of expenses Plaintiffs seek to recover, including costs incurred as a result of this litigation, costs on work undertaken in response to Defendants' conduct, and acupuncture Thorton received to ameliorate her stress. As with the medical expenses, there is no substantiation for any of these expenses. The Court also notes that this exhibit includes a third column, "prep for inquisition" that seems redundant rather than noting an additional expense. The Court shall not take amounts noted in this column into account for calculating damages.

The Court shall now address each expense or group of expenses in the order they appear in the exhibit.

(1) Plaintiffs' "landscaping plan to block out Schiavellos; fencing to prevent Schiavellos [*sic* ] from hitting husband/dog" is the first item noted in the revised exhibit, totaling $40,000. This is an estimate for work that has not occurred yet. Thorton testified that this work includes a shed, plantings and opaque fencing intended to block any view of Defendants. This is not recoverable.

(2) The second item Plaintiffs seek recovery for is $600 for "forensic psychology" by Dr. Zingaro, dated November 28, 2013. There is no separate evidence of this expense, and it is unclear exactly what work by Dr. Zingaro incurred this cost. Dr. Zingaro's expert report lists several dates on which the doctor met with Thorton; November 28 is not one of those dates. The date on which Dr. Zingaro testified is November 19—it is unclear from the exhibit whether this cost is associated with Dr. Zingaro's testimony. Expert fees may be rewarded at the Court's discretion, though generally only fees associated with time spent testifying or waiting to testify, along with reasonable travel expenses, are rewarded.[22] There is not enough evidence before the Court to make that determination. While the Court has no reason to doubt Thorton's veracity, it would be neither fair nor just to award Plaintiffs expert costs without any substantiation besides Thorton's recollection of the cost. As stated *supra*, the Court

---

22. *Payne v. Home Depot,* 2009 WL 659073, at    *7 (Del.Super. Mar. 12, 2009).

found that it was able to award certain medical expenses to Plaintiffs because of Dr. Zingaro's corroborative testimony. Such corroboration does not exist here. Accordingly, the Court finds that Plaintiff has not established this cost by a preponderance of the evidence.

(3) "Video professional"—inquisition preparation of $400 dated November 10, 2013. There is no corroboration of this amount; it is not recoverable.

(4) Acupuncture performed by Heather's Holistic on October 17, 2013, in the amount of $451 for "backpain and stress." Even if there was evidence of this amount (there is not), the Court fails to see how the cost of uninsured acupuncture is either reasonable or necessary as to rise to the level of recoverable damages. This is not recoverable.

(5) Boundary survey conducted by Becker Morgan on September 30, 2013 in the amount of $1,098.03. As noted *supra*, the Court finds it improper to reach a ruling regarding Plaintiffs' continuing trespass claim in the context of a determination of damages following an inquisition hearing. Plaintiffs shall not recover this expense.

(6) Forensic psychology on September 27, 2013 with Dr. Zingaro in the amount of $225. There is no corroboration of this cost. It shall not be recovered.

(7) $1,650 attributable to "electrify shed # 1" for installation of a security camera by Any Hour Electric on September 27, 2013. This cost was not proved by a preponderance of the evidence, and even if it had been, Defendants should not be held liable for what is essentially a personal choice of Thorton's that is not directly attributable to Defendants' actions.

(8) $925 attributable to "electrify shed # 2" for electrifying a shed to block Defendants' view of Plaintiffs' deck. This appears to be a future cost that has not yet been incurred. It shall not be recovered.

(9) $25 for service of subpoena by Delaware Attorney Services for "inquisition", dated September 20, 2013. Upon whom this was served is not clear from the exhibit. However, there is an e-filed letter from Plaintiffs' attorney dated May 18, 2013 to Plaintiffs with copies of subpoenas for Plaintiffs' witnesses to be called at the inquisition hearing. While the cost of service of these subpoenas is not stated in the letter or elsewhere on the record, other cases have awarded costs for service of subpoenas for amounts similar to $25.[23] Nonetheless, there is insufficient corroboration on the record to allow Plaintiffs to recover this.

(10) Forensic psychology with Dr. Zingaro on September 13, 2013 for $1,537.50. Neither the amount nor this session is corroborated. It is not recoverable.

(11) Service of subpoena for the deposition of Dr. Grewal, dated August 13, 2013 in the amount of $25. As with the other subpoena costs, this is not corroborated and shall not be recovered.

(12) $113.15 for a court reporter for Dr. Grewal's deposition. This unsubstantiated cost has not been proved by a preponderance of the evidence. It is not recoverable.

(13) An estimated cost of $18,645 for the future construction of a carriage house shed to block Defendants' view of Plaintiffs' porch. Defendants' conduct, as tasteless as it might have been, does not warrant recovery for such an expense, particularly one that has yet to be incurred. This is not recoverable.

(14) Forensic psychology with Dr. Zingaro on July 30, 2013 in the amount of $225.

**23.** *See, e.g., Cooke v. Murphy*, 2013 WL 6916941, at *4, 6 (Del.Super. Nov. 26, 2013) (awarding $30 for service of subpoena expenses).

While the date is corroborated, the amount is not. It shall not be recovered.

(15) Forensic psychology with Dr. Zingaro dated July 15, 2013 for $750. This is not corroborated by Dr. Zingaro's report and shall not be rewarded.

(16) $375 for "record review" by Dr. Zingaro, dated July 5, 2013. This date is corroborated in Dr. Zingaro's report, but not the basis for the amount. This shall not be recovered.

(17) Forensic psychology with Dr. Zingaro dated June 28, 2013 for $562. This date is not corroborated in Dr. Zingaro's report. This shall not be recovered.

(18) $2,971.70 for a "professional survey project" conducted on June 27, 2013. This cost was not proved and is not relevant. It shall not be recovered.

(19) "Review of written and video logs" with Dr. Zingaro dated June 25, 2013 for $712. This date is corroborated by Dr. Zingaro's report but the amount is not. It shall not be recovered.

(20) Forensic psychology with Dr. Zingaro dated June 25, 2013 for $150. This date is corroborated by Dr. Zingaro's report but the amount is not. This is not recoverable.

(21) Acupuncture on December 21, 2012 with Heather's Holistic for $677.50. This cost was not covered by Plaintiffs' insurance. It is not recoverable.

(22) Acupuncture on October 17, 2012 with Heather's Holistic for "dealing with stress" in the amount of $451.24. This cost was not covered by Plaintiffs' insurance. It is not recoverable.

(23) Cymbalta on September 30, 2011 for depression and stress for $445.16. This is a duplicative cost contained in Plaintiffs'

other exhibit that was already addressed *supra.* It shall not be recovered twice.

(24) Legal support and assistance from Just Answer for "legal distinctions needed to answer defendants questions"[24] in the amount of $25. The date for this expense is September 7, 2011. No further details or corroboration are provided. It is not recoverable.

(25) $300 for "3 fast growing trees, two hollies and one Japanese cedar" purchased from How Sweet It Is on August 23, 2011 to block Defendant's view of Plaintiffs' backyard and deck. The Court fails to see how this cost is relevant and it shall not be recovered.

(26) Typing support by a Yvette Liberto on August 21, 2011 for "typing support" in the amount of $150. This amount has not been proved nor is it relevant. It shall not be recovered.

(27) Another typing support expense dated August 21, 2011, to "ease emotional burden on plaintiff," in the amount of $150. For this item, the typist is named "Yvette Schiavello." This may be duplicative. It is not recoverable.

(28) Computer technical support from 1st State Computer dated July 26, 2011 for "Expert to fix/teach" in the amount of $65. It is unclear what, if anything, this has to do with the instant case. It is not recoverable.

(29) July 19, 2011 typing support by Yvette Schiavello in amount of $127. This is not recoverable for reasons previously stated.

(30) July 17, 2011 typing support by Yvette Schiavello in amount of $136. This is not recoverable.

---

**24.** It is evident to the Court that this exhibit misuses "defendants" and "plaintiffs" in this instance, as well as for other expenses. It appears that "defendants" refers to Thorton and Jagger and "plaintiffs" refer to Donald and Bernadette.

(31) $52.98 for a "jump drive sharpie" for labeling data. This, as with all of these similar expenses, has not been proved nor is it clear how this is at all relevant. It is not recoverable.

(32) July 11, 2011 typing support by Yvette Schiavello for $210. Again, as with all typing costs, this is not recoverable.

(33) Computer technical support from 1st State Computer on June 30, 2011 for $130. This is neither relevant nor recoverable.

(34) Another expense for "legal support and assistance" from Just Answer on June 29, 2011 for $25 for "what is trespassing?" This is not recoverable.

(35) The next four items on the exhibit, dated June 28, May 31 (twice) and February 16, 2011 all concern what appear to be medication for alopecia (hair loss). These all appear to be completely irrelevant; if Plaintiffs are attempting to recover for this as damages relating to this case, they have not been proved. These expenses are not recoverable.

(36) Video converter for $34 dated December 7, 2010. This is neither relevant nor recoverable.

(37) The next three items, all dated October 26, 2010 again all appear to be related to alopecia medication. These are not recoverable.

(38) $709 for a security camera to "enable police enforcement of misdemeanors" dated September 28, 2010. There is no corroboration for this expense. It is not recoverable.

(39) $600 for a limousine on August 23, 2010 to bring guests to a party at Plaintiffs' home. Thorton testified about this expense on the second day of the hearing. Again, there is no corroboration of this expense. This is not recoverable.

(40) $1,775 for labor hired from Hummell Builders for "labor to change box bay to slider" on March 29, 2010. The reason for this expense was to "prevent defendant from making 'moose ears' at Plaintiff when Plaintiff was in her bedroom dressing." There is no corroboration for this expense. It is not recoverable.

(41) Another item is listed for a "lattice wall" for the same reasons as the immediately preceding item. However, no cost/amount is provided. Thus, it is not recoverable.

(42) $23,000 for fencing around property from Long Fence, on April 15, 2009. This was "required by county because Defendant's lied during Board of Adjustment Hearing(s) to replace permitted fencing for dog outside doggy door to interior of house." There is no corroboration for this expense nor substantiation for Plaintiffs' claims regarding this expense. It is not recoverable.

(43) $7,999 for "hot tub bill of sale at loss" dated May 30, 2008. The comment for this exhibit states that the hot tub was rendered unusable due to "peeking tom" by "plaintiff" (again, this is likely a misuse of the term 'plaintiff'). This is not recoverable.

(44) $685 for dog run, dated August 23, 2007. This appears to be connected to the Board of Adjustment hearing referenced above. No other details or corroboration provided. This cannot be recovered.

(45) The remaining items are undated. $1,000 for removal of blacktop-if this concerns the continuing trespass claim, it is not recoverable. $100 for a 5–feet–tall pine tree to block Defendants' view of garage. Neither is corroborated. These cannot be recovered.

### General damages

■ Again, with more oversight of the exhibits by Plaintiffs' counsel, many of the foregoing items may have either been

omitted or corroborated. Failure to recover most of these expenses does not mean that Plaintiffs cannot recover any further damages. Based on the extreme conduct of Defendants that Plaintiffs were subjected to on a highly frequent, if not daily, basis over the course of several years, the Court finds by a preponderance of the evidence that Plaintiffs are entitled to general compensatory damages. General compensatory damages may be awarded without regard to out of pocket losses and are those such that the law presumes to be the natural and probable consequences of the defendants' wrongful conduct.[25] Upon careful consideration of the egregiousness of Defendants' conduct, the distress suffered by Plaintiffs because of that conduct, and the harm to Plaintiffs' privacy rights and rights to enjoy their property caused by Defendants' conduct, the Court finds that Plaintiffs shall recover $50,000 in general damages.

### Court Costs

Many of the non-medical expenses which Plaintiffs sought to recover but could not due to lack of corroborating evidence can be appropriately classified as court costs. These include: expert fees of Dr. Zingaro and Dr. Grewal; subpoena costs; and court reporter costs for depositions. These do not include any other of the above expenses, including the typing support expenses and the Just Answer expenses-these cannot be recovered at all.

Plaintiffs are entitled to recover reasonable court costs. Accordingly, even though the Court could not reward these expenses at this time due to lack of corroboration, Plaintiffs shall be permitted to file with the Court a motion for costs, that shall be limited to the specific costs listed above. Provided that Plaintiffs provide corroboration for these costs, the Court shall then determine which of these costs can be recovered. Again, the Court stresses that such a motion shall only be limited to expert-related expenses and other court costs such as subpoena and court reporter fees, and no other expenses.

### CONCLUSION

■ Based on this Court's determination following the inquisition hearing, Plaintiffs are entitled to recover from Defendants the following damages:

| | |
|---|---|
| Cymbalta | $3,881.59 |
| Mental health counseling | $8,185.98 |
| General damages | $50,000.00 |
| | |
| Total | $62,067.57 |

IT IS SO ORDERED.

---

**25.** *Guthridge v. Pen–Mod, Inc.,* 239 A.2d 709,    714–15 (Del.Super.1967).