# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RONALD L. LANGSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N19C-09-060 JRJ |
| | ) | |
| EXTERIOR PRO SOLUTIONS, | ) | |
| INC. d/b/a DRY TECH | ) | |
| WATERPROOFING SOLUTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  September 24, 2020
Date Decided:  October 21, 2020

*Upon Defendant's Motion to Vacate Amount of Judgment and for an Inquisition Hearing*:  **DENIED.**

Thomas E. Hanson, Jr., Esquire, Barnes & Thornburg LLP, 1000 N. West Street, Suite 1500, Wilmington, Delaware 19801, Attorney for Plaintiff.

Victoria K. Petrone, Esquire and Brian V. DeMott, Esquire, Baird Mandalas Brockstedt LLC, 2711 Centerville Road, Suite 401, Wilmington, Delaware 19808, Attorneys for Defendant.

**Jurden, P.J.**

# I. INTRODUCTION

Pursuant to Delaware Superior Court Civil Rule 55(b)(1), Plaintiff Ronald Langston directed the Prothonotary to enter default judgment against Defendant Exterior Pro Solutions, Inc., d/b/a Dry Tech Waterproofing Solutions ("Dry Tech").[1] After the Prothonotary did so, Dry Tech filed a Motion for Relief from Judgment, which the Court denied.[2] Dry Tech has now filed this Motion to Vacate Amount of Judgment and for an Inquisition Hearing (the "Motion").[3] For the reasons set forth below, the Court finds that Langston has satisfied the requirements of Rule 55(b)(1), rendering the amount of the default judgment appropriate and an inquisition hearing unnecessary. Accordingly, Dry Tech's Motion is **DENIED**.

# II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This case centers on a dispute over waterproofing services.[4] The basement of Langston's house had been flooding, and Langston hired Dry Tech to resolve the issue.[5] According to Langston, Dry Tech's president investigated the premises, identified what he believed to be the flooding's causes, and then had a crew of Dry Tech workers engage in extensive waterproofing services.[6] In his Complaint,

---

[1] Direction to Enter Default Judgment (Trans. ID. 64388490).
[2] Motion for Relief from Judgment (Trans. ID. 64454441); Memorandum Opinion on Defendant's Motion for Relief from Judgment (Trans. ID. 65592232).
[3] Motion to Vacate Amount of Judgment and for an Inquisition Hearing (Trans. ID. 65884756).
[4] *Id.* at 2.
[5] Complaint, at ¶ 4 (Trans. ID. 64175293).
[6] *Id.* at ¶¶ 5–7, 11.

Langston alleges that he paid $14,210 for these services.[7] To support this allegation, Langston cites Exhibit A to the Complaint, which comprises Dry Tech's work order charging him $14,210 and a check that he made out to Dry Tech in the amount of $14,210.[8]

Langston avers that his basement continued to flood despite Dry Tech's services.[9] He contends that the flooding's true cause was a hole in the outside wall of his house that led down to cracks in the crawlspace wall of his basement.[10] Langston maintains that Dry Tech failed to discover the hole and the cracks during its investigation.[11] He alleges that Dry Tech initially offered to repair the hole and the cracks for $3,000 but eventually agreed to make the repairs for free.[12]

Langston also charges Dry Tech with having caused substantial damage to his basement.[13] He asserts that he had to hire another company, Marlings, Inc., to restore his basement after Dry Tech had finished its initial work.[14] Langston alleges that he paid Marlings, Inc. $6,709.04 for its restoration services.[15] To support this

---

[7] *Id.* at ¶ 12 (citation omitted).
[8] *Id.*; Exhibit A to Complaint (Trans. ID. 64175293).
[9] Complaint, at ¶ 13 (Trans. ID. 64175293).
[10] *See id.* at ¶¶ 14–18.
[11] *See id.* at ¶¶ 17–19.
[12] *Id.* at ¶ 19.
[13] *Id.* at ¶ 20.
[14] *Id.*
[15] *Id.* Langston writes $6,709.03 in his Complaint, but Exhibit B to the Complaint confirms that Langston actually paid $6,709.04. Exhibit B to Complaint (Trans. ID. 64175293).

allegation, Langston cites Exhibit B to the Complaint, an invoice that Marlings, Inc. issued to Langston in the amount of $6,709.04.[16] The word "PAID" is stamped on the invoice.[17]

After Langston filed his Complaint on September 6, 2019, "Dry Tech was served . . . in accordance with 10 *Del. C.* § 3104(f) on September 16, 2019, and its response was due by October 7, 2019. When Dry Tech failed to respond by the deadline, Langston directed the Prothonotary to enter default judgment on November 5, 2019."[18] Langston's direction to the Prothonotary included Exhibits A and B to the Complaint and two affidavits—one sworn by Langston's counsel and the other sworn by Langston himself.[19]

In his own affidavit, Langston asserts that Dry Tech owes him a principal amount of $17,919.04.[20] To arrive at that amount, Langston calculated as follows:

---

[16] Complaint, at ¶ 20 (Trans. ID. 64175293); Exhibit B to Complaint (Trans. ID. 64175293).

[17] Exhibit B to Complaint (Trans. ID. 64175293).

[18] Memorandum Opinion on Defendant's Motion for Relief from Judgment, at 4 (Trans. ID. 65592232).

[19] Direction to Enter Default Judgment (Trans. ID. 64388490); Affidavit of Thomas E. Hanson, Jr. re Direction to Enter Default Judgment (Trans. ID. 64388490); Affidavit of Ronald N. Langston in Support of Plaintiff's Direction for Entry of Default (Trans. ID. 64388490); Exhibit A to Affidavit of Ronald N. Langston in Support of Plaintiff's Direction for Entry of Default (Trans. ID. 64388490); Exhibit B to Affidavit of Ronald N. Langston in Support of Plaintiff's Direction for Entry of Default (Trans. ID. 64388490).

[20] Affidavit of Ronald N. Langston in Support of Plaintiff's Direction for Entry of Default, at ¶ 6 (Trans. ID. 64388490).

$14,210.00 (amount paid for Dry Tech's unsuccessful services)

+  $6,709.04 (amount paid for Marlings, Inc.'s restoration services)

−  $3,000.00 (amount for Dry Tech to repair the hole and cracks)

$17,919.04 (principal amount due).[21]

In his Direction to Enter Default Judgment, Langston took the $17,919.04 principal amount and added $1,379.77 in interest and $207.50 in costs to arrive at his total amount demanded: $19,506.31.[22]

On November 21, 2019, Dry Tech filed a Motion for Relief from Judgment.[23] On December 5, 2019, Langston filed a response in opposition to the motion.[24] On December 11, 2019, the Court held a hearing on the motion[25] and ultimately denied it on April 22, 2020.[26]

On May 18, 2020, Dry Tech filed a letter with the Court indicating its intent to file a motion for an inquisition hearing.[27] On June 1, 2020, Langston filed a letter

---

[21] *See id.*

[22] Direction to Enter Default Judgment, at ¶ 4 (Trans. ID. 64388490).

[23] Motion for Relief from Judgment (Trans. ID. 64454441).

[24] Response In Opposition To Defendant's Motion For Relief From Judgment (Trans. ID. 64492346)

[25] *See* Judicial Action Form for Defendant's Motion for Relief from Judgment (Trans. ID. 64515828).

[26] Memorandum Opinion on Defendant's Motion for Relief from Judgment (Trans. ID. 65592232).

[27] Letter Regarding Defendant's Intent to File a Motion for an Inquisition Hearing (Trans. ID. 65643452).

in opposition.[28] On August 28, 2020, Dry Tech filed the instant Motion.[29] Finally, on September 24, 2020, Langston filed his response in opposition to the Motion.[30]

### III. PARTIES' CONTENTIONS

Dry Tech asks the Court to vacate the default judgment entered against it and to schedule an inquisition hearing.[31] Dry Tech argues as follows: Langston directed the Prothonotary to enter default judgment against Dry Tech for a sum certain (i.e., $19,506.31).[32] Pursuant to Delaware Superior Court Civil Rule 55(b), the Prothonotary can enter default judgment against a party for a sum certain only if the moving party's complaint includes a demand for a sum certain.[33] If it does not, then the Court must hold an inquisition hearing to set the amount of damages owed.[34] Here, Langston did not demand a sum certain in his Complaint, and the Court has not held an inquisition hearing.[35] Accordingly, Dry Tech concludes, the Court must vacate the amount that the Prothonotary entered against Dry Tech and then must hold an inquisition hearing.[36]

---

[28] Letter in Opposition to Defendant's Intent to File a Motion for an Inquisition Hearing (Trans. ID. 65667798).

[29] Motion to Vacate Amount of Judgment and for an Inquisition Hearing (Trans. ID. 65884756).

[30] Response in Opposition to Motion to Vacate Amount of Judgment and for an Inquisition Hearing (Trans. ID. 65962978).

[31] Motion to Vacate Amount of Judgment and for an Inquisition Hearing, at 1 (Trans. ID. 65884756).

[32] *Id.* at ¶ 3.

[33] *Id.* at ¶ 6.

[34] *Id.* at ¶ 10.

[35] *Id.* at ¶ 2.

[36] *Id.* at ¶ 10.

In response, Langston argues that an inquisition hearing should be held only when the Court finds that it would be necessary and proper to hold one.[37] According to Langston, "Rule 55(b)(2) of the Delaware Superior Court Rules of Civil Procedure[] states that the Court may conduct an inquisition hearing if it deems it proper and necessary to do so where 'it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment of evidence or to make an investigation of any other matter.'"[38] Here, Langston asserts, there is no need for an inquisition hearing because the Complaint and the affidavit provided to the Prothonotary set out the bases and calculations for the amount of damages, costs, and interest demanded.[39] Equipped with Langston's Complaint, affidavit, and supporting exhibits, the Prothonotary properly entered default judgment for the amount that Langston demanded.[40]

---

[37] Response in Opposition to Motion to Vacate Amount of Judgment and for an Inquisition Hearing, at ¶ 3 (citing Del. Super. Ct. Civ. R. 55; and then quoting *Jagger v. Schiavello*, 93 A.3d 656, 659 (Del. Super. Ct. 2014)) (Trans. ID. 65962978).

[38] *Id.*

[39] *Id.* at ¶¶ 4–6.

[40] *See id.* at ¶ 9.

## IV. DISCUSSION

### A. Delaware Superior Court Civil Rule 55(b)

Rule 55(b) governs the entry of default judgment.[41]  More specifically, Rule 55(b)(1) governs the Prothonotary's entry of default judgment,[42] and Rule 55(b)(2) governs the Court's entry of default judgment.[43]  Here, Langston invoked Rule 55(b)(1), as he directed the Prothonotary to enter default judgment against Dry Tech.[44]  Rule 55(b)(1) provides:

> When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the Prothonotary upon written direction of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has failed to appear in accordance with these Rules unless the defendant is an infant or incompetent person. When a party is entitled to have the Prothonotary enter judgment by default pursuant to this paragraph, the party shall submit with the party's direction to the Prothonotary to enter judgment a statement showing the principal amount due, which shall not exceed the amount demanded in the complaint, giving credit for any payments and showing the amounts and dates thereof, and a computation of interest to the date of judgment, to which statement shall be appended an affidavit of the party or the party's attorney stating: (1) That the party against whom judgment is sought is not an infant or an incompetent person; (2) that the party has made default in appearance in the action; and (3) that the amount shown by the statement is justly due and owing and that no part thereof has been paid. The Prothonotary shall thereupon enter judgment for principal, interest and costs.[45]

---

[41] Del. Super. Ct. Civ. R. 55(b).
[42] Del. Super. Ct. Civ. R. 55(b)(1).
[43] Del. Super. Ct. Civ. R. 55(b)(2).
[44] Direction to Enter Default Judgment, at 1 (Trans. ID. 64388490).
[45] Del. Super. Ct. Civ. R. 55(b)(1).

8

Notably, Rule 55(b)(1) makes no mention of inquisition hearings or hearings of any kind.[46] It merely explains when a party is entitled to have the Prothonotary enter default judgment and what an entitled party must submit to the Prothonotary. The Court will follow this two-step structure, first determining whether Langston was entitled to have the Prothonotary enter default judgment against Dry Tech and then determining whether Langston made the required submissions.

## B. Langston Was Entitled to Have the Prothonotary Enter Default Judgment Against Dry Tech

To begin, Rule 55(b)(1) requires that "the plaintiff's claim against a defendant [be] for a sum certain or for a sum which can by computation be made certain."[47] Here, Dry Tech argues that Langston has not satisfied this requirement because he failed to include a sum certain in his Complaint.[48] The Court agrees that Langston's

---

[46] Rule 55(b)(2) provides that "the Court may conduct such hearings . . . as it deems necessary and proper" to assist it in entering default judgment. Del. Super. Ct. Civ. R. 55(b)(2). But Rule 55(b)(2) governs the entry of default judgment by *the Court*, not by the Prothonotary. *Id.* Langston's "necessary and proper" argument is therefore inapposite. Response in Opposition to Motion to Vacate Amount of Judgment and for an Inquisition Hearing, at ¶ 3 (citing Del. Super. Ct. Civ. R. 55; and then quoting *Jagger v. Schiavello*, 93 A.3d 656, 659 (Del. Super. Ct. 2014)) (Trans. ID. 65962978). Dry Tech, for its part, quotes the Superior Court case *Dill v. Dill* for the proposition that "[a]fter a default judgment is ordered, an inquisition hearing is held to determine the amount of damages due." *Dill v. Dill*, 2016 WL 4127455, at *1 (Del. Super. Ct. Aug. 2, 2016) (citing *Patton v. Yancey*, 2014 WL 4674600, at *1 (Del. Super. Ct. Sept. 22, 2014)). But the Court in *Dill* was relying on a case that involved Court of Common Pleas Civil Rule 55(b)(2), which, like its Superior Court analog, governs *Court*-entered default judgments. *Patton v. Yancey*, 2014 WL 4674600, at *2 (Del. Super. Ct. Sept. 22, 2014) (citing Ct. Com. Pl. Civ. R. 55(b)(2)).

[47] Del. Super. Ct. Civ. R. 55(b)(1).

[48] Motion to Vacate Amount of Judgment and for an Inquisition Hearing, at ¶ 6 (Trans. ID. 65884756) (citation omitted) ("Rule 55(b) only permits the prothonotary to enter default judgment

9

Complaint does not include a demand for a sum certain, but that is not what Rule 55(b)(1) requires. It instead requires that the plaintiff's "claim" be for a sum certain or a sum that can be made certain by computation. The drafters of Rule 55(b)(1) reference an "amount demanded in the complaint" later in the paragraph, so the fact that they use broader language in the first sentence suggests that the Court should take a broader view of Langston's allegations and desired remedy.[49]

The Court finds that Langston has asserted "claim[s] . . . for a sum which can by computation be made certain."[50] Langston's Complaint and its accompanying exhibits allege definite amounts of damages.[51] In his affidavit, Langston used those amounts to compute his demanded principal amount of $17,919.04.[52] He then added his court costs and the interest that had accrued up to the date on which he filed his direction to the Prothonotary to arrive at the sum of $19,506.31.[53]

Rule 55(b)(1)'s other requirements for entitlement are satisfied as well. Langston submitted a written direction with an affidavit of the amount due to the

---

for a sum certain without an inquisition hearing if a sum certain is demanded in the complaint, and a sum certain had not been demanded in Plaintiff's Complaint.")

[49] Del. Super. Ct. Civ. R. 55(b)(1).

[50] *Id.*

[51] Complaint, at ¶ 12 (citing Exhibit A to the Complaint); *id.* at ¶ 19; *id.* at ¶ 20 (citing Exhibit B to the Complaint).

[52] Affidavit of Ronald N. Langston in Support of Plaintiff's Direction for Entry of Default, at ¶ 6 (Trans. ID. 64388490).

[53] Direction to Enter Default Judgment, at ¶ 4 (Trans. ID. 64388490).

Prothonotary,[54] Dry Tech failed to appear in accordance with the Delaware Superior Court Civil Rules,[55] and Dry Tech is not an infant or an incompetent person. Accordingly, Langston was entitled to have the Prothonotary enter default judgment against Dry Tech.

### C. Langston Made the Appropriate Submissions to the Prothonotary

A party who is entitled to have the Prothonotary enter default judgment must submit specific filings to the Prothonotary before default judgment may be entered.[56] One of the filings that the party must submit is a direction to have the Prothonotary enter default judgment.[57] With that direction, the party must include a statement that computes interest to the date of judgment and that shows "the principal amount due, which shall not exceed the amount demanded in the complaint" and which must give credit for any payments made.[58] Lastly, the party must attach an affidavit stating "(1) that the party against whom judgment is sought is not an infant or an incompetent person; (2) that the party has made default in appearance in the action; and (3) that the amount shown by the statement is justly due and owing and that no part thereof has been paid."[59]

---

[54] *Id.*
[55] *See generally* Direction to Enter Default Judgment (Trans. ID. 64388490).
[56] Del. Super. Ct. Civ. R. 55(b)(1).
[57] *Id.*
[58] *Id.*
[59] *Id.* (brackets omitted).

11

On November 5, 2019, Langston submitted a direction for the Prothonotary to enter default judgment against Dry Tech.[60] That direction included a calculation of the interest that had accrued and a statement of the principal amount due, $17,919.04.[61] This principal amount does not exceed the amount that Langston demanded in his Complaint; as noted above, Langston did not demand a single amount in his Complaint but instead itemized the various costs and used them to calculate the principal amount due.[62] Langston's direction to the Prothonotary also alleged that Dry Tech is neither an infant nor an incompetent person; that Dry Tech defaulted; and that Langston's affidavit proves the amount owed, which equals the principal amount due.[63]

Pursuant to Rule 55(b)(1), Langston was entitled to have the Prothonotary enter default judgment against Dry Tech, and Langston made the required filings, assertions, and calculations.[64] Accordingly, the Prothonotary properly entered

---

[60] Direction to Enter Default Judgment (Trans. ID. 64388490).

[61] *Id.* at ¶ 4.

[62] Affidavit of Ronald N. Langston in Support of Plaintiff's Direction for Entry of Default, at ¶ 6 (Trans. ID. 64388490).

[63] Direction to Enter Default Judgment, ¶¶ 3–4 (Trans. ID. 64388490); Affidavit of Ronald N. Langston in Support of Plaintiff's Direction for Entry of Default, at ¶ 6 (Trans. ID. 64388490).

[64] The Court recognizes that although the substance of Langston's filings complies with Rule 55(b)(1), the form of the filings does not. For example, the affidavit, not the direction to the Prothonotary, should have stated that Dry Tech is not an infant or an incompetent person. Del. Super. Ct. Civ. R. 55(b)(1). Yet the Prothonotary accepted Langston's filings, and Dry Tech does not challenge their validity based on their merely technical defects.

default judgment for the amount demanded, so vacatur of that judgment is inappropriate, and an inquisition hearing is unnecessary.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Amend Complaint is **DENIED**. The Court finds that, pursuant to Rule 55(b)(1), Langston was entitled to direct the Prothonotary to enter default judgment against Dry Tech. The Court also finds that Langston provided the Prothonotary with the necessary filings, which contain the assertions and calculations that Rule 55(b)(1) requires. The Prothonotary thus properly entered default judgment against Dry Tech in the amount of $19,506.31. Accordingly, the Court will neither vacate the default judgment entered against Dry Tech nor hold an inquisition hearing.

**IT IS SO ORDERED.**

*Jan R. Jurden*

_____
Jan. R. Jurden, President Judge

cc:    Prothonotary

13