## IN THE COURT OF COMMON PLEAS
## FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
| SHERITA LOWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. CPU4-16-001147 |
| | ) | |
| LONNA CHERI SMITH, | ) | |
| and CHARLES E. SMITH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

Submitted: August 17, 2017
Decided: September 25, 2017

Michael J. Hood, Esq.
Michael J. Hood LLC
916 New Road
Wilmington, DE 19805
*Attorney for Plaintiff*

Anthony Forcina, Esq.
Allstate Ins. Co. Staff Counsel
220 Continental Dr., Ste. 205
Newark, DE 19713
*Attorney for Defendants*

**WELCH, J.**

This case concerns a vehicle accident in which Plaintiff Sherita Lowman ("Plaintiff") suffered injuries as a result of the collision. Only Defendant Lonna Cheri Smith ("Defendant") and her counsel appeared for trial before the Court on June 27, 2017, as the parties had jointly dismissed Defendant Charles Smith from the case. The Court reserved its decision and requested supplemental briefing.

Plaintiff submitted her Opening Brief on July 17, 2017. Defendant submitted her Response Brief on August 3, 2017. Plaintiff filed its Reply Brief on August 17, 2017. This is the Court's Final Memorandum Opinion and Order after consideration of oral and documentary evidence submitted at trial, arguments made at trial, supplemental briefing, and the applicable law. For the reasons discussed below, the Court finds in favor of Plaintiff Sherita Lowman in the amount of $3,000 plus costs.

### Facts

Based on the testimony and evidence presented at trial, the Court finds the relevant facts to be as follows.

On May 16, 2015, Plaintiff, an athletic seventeen-year-old student at Delcastle Technical High School, was scheduled to compete in three races at the state finals track meet: the four-by-four relay, four-by-two relay, and hurdles. While traveling to the state finals, Defendant rear-ended the school bus that was transporting Plaintiff and her team. Because Plaintiff was seated on the fifth row directly above a wheel hub of the school bus, with her legs outstretched across the aisle and resting on a diagonal seat, she complained of pain in her lower back and was transported to the emergency room of Bayhealth Kent General Hospital. The Emergency Department Chart ("Report") indicates that Plaintiff was diagnosed with "pain in thoracic spine" and "paravertebral

2

muscle spasm."[1] The Report's "Results" section indicates that no lumbar spine fracture or thoracic spine fracture were present.[2] In the medical priority section ("Triage"), the Report indicates that Plaintiff was complaining of lower back pain "which is chronic for her from previous back injury."[3] Under the physical examination of the musculoskeletal region, the Report indicates the following issues:

> Exam of the upper back and thoracic shows mild to moderate tenderness over approximately the 7th thoracic vertebrae. There is a marked degree of thoracic spine paravertebral spasm on the right and left side of the upper back. Exam of the upper spine elicits a very definite 'trigger point' that seems to reproducibly elicit the patient's symptoms. . . . There is mild to moderate lumbosacral paravertebral spasm on the right and left side of the low back. Unable to elicit a 'trigger' point.[4]

She was prescribed eight-hundred grams of ibuprofen, Motrin.[5] Under the "Discharge Instructions" section, the Report states, "[y]our back pain is most likely caused by a strain of the muscles or ligaments supporting the spine. Back strains cause pain and trouble moving because of muscle spasms. They may take several weeks to heal. Usually they are better in days."[6]

For treatment, the Report suggested: resting on a firm mattress; remaining active so as not to sit or stand for more than thirty minutes at a time; not bending over or lifting anything over twenty pounds; not twisting, reaching or performing work overhead; and applying ice packs to the back every few hours for the first two to three days and then alternating between ice and heat.[7] Plaintiff was advised to schedule an appointment with a doctor "if [her] back pain [was] not better in one week."[8] Despite the emergency room visit, Plaintiff was able to compete in her last

---

[1] Plaintiff's Exhibit 1, Tab 1, at 5.
[2] *Id.* at 6-7.
[3] *Id.* at 2.
[4] *Id.* at 4.
[5] *Id.* at 5.
[6] *Id.* at 9.
[7] *Id.*
[8] *Id.*

competition, hurdles. She testified at trial that she won the competition, but "won with tears." Plaintiff was absent from class as a result of the accident and graduated high school on time.

As a result of her injuries from the accident, Plaintiff attended physical therapy sessions at Nemours/A.I. DuPont Hospital for Children ("Nemours") from May 18, 2015 until August 18, 2015.[9] She testified regarding her back pain that "some days were better than others." She testified that she was familiar with the "pain scale" rating system at Nemours of 0 symbolizing no pain and "10" symbolizing unbearable pain, as she had treated at Nemours for her lower back injury in 2014.[10] She testified that she was always honest with the physical therapist regarding her pain level.

On May 18, 2015, Plaintiff's first appointment, the "Orthopaedic Patient History Form" indicates that her pain was a "Level 4" while in the office—in between her denoted weekly low of "Level 2" and high of "Level 6."[11] However, she later states that she is experiencing no pain.[12] The Report states that Plaintiff "sustained a back strain," but "may participate in track on Wednesday 5/20/15 if her back pain is 3/10 or less."[13] Plaintiff was restricted from lifting over ten pounds for two weeks, but was informed that she could resume all activities and lifting by June if her back pain resolved.[14] Plaintiff was prescribed two-hundred and fifty milligrams of Naprosyn to replace the ibuprofen.[15]

---

[9] Plaintiff's Exhibit 1, Tab 2; Defendant's Exhibit 1, Tab 2. While both parties submitted the physical therapy records into evidence, neither party's exhibit is complete.

[10] On June 24, 2014, Plaintiff was diagnosed with "lumbar spondylolysis." Defendant's Exhibit 1, Tab 2, at 58. The injury occurred on its own and was not the result of a vehicle accident. Nevertheless, Plaintiff admitted that this prior injury resulted in very similar pain and treatment to the current injury, including the physical therapy recovery time and limited track related activities. In March 2016, Plaintiff was involved in a vehicle collision with resulting back-pain in Indiana while attending college.

[11] Plaintiff's Exhibit 1, Tab 1, at 18.

[12] *Id.* at 14.

[13] *Id.* at 16, 86.

[14] *Id.*

[15] *Id.* at 16.

On May 26, 2015, Plaintiff returned to Nemours because of "[p]alpable muscle spasm to entire lumbar spine" and indicated "Level 3" pain.[16] A "brief course of outpatient [physical therapy] was recommended.[17] Plaintiff indicated "Level 5" pain post-treatment.[18] On June 3, 2015, the Nemours' records indicate that Plaintiff's pain was "gone" and she was "pain-free."[19] Plaintiff's restrictions were lifted.[20]

On June 8, 2015, Plaintiff's assessment notes "increased soft tissue spasm of BL thoracic and lumbar paraspinals . . . in addition to hypomobility of lumbar spine and SIJ dysfunction."[21] Plaintiff's pain level was noted as "Level 3."[22] On June 10, 2015, Plaintiff believed there was a "decrease in pain overall," indicating "Level 2" pain.[23] She continued to "exhibit innominate rotation" at the beginning of the session, but was noted as responding well to physical therapy treatment.[24] On June 17, 2015, Plaintiff indicated that although her pain was "Level 0" at the appointment, her pain had been a " Level 10" the day before when she started work because she was often standing.[25] She had "[o]ccasional persistent pinching and limited core stability impacting participation" during her physical therapy.[26] Plaintiff noted no pain at her appointment and stated that her pain level had improved by her physical therapy visit on June 19, 2015, but she was having problems sleeping in her bed.[27] The Nemours records note the same assessment concerns as on June 17, 2015.[28]

---

[16] *Id.* at 2.
[17] *Id.* at 4.
[18] *Id.*
[19] Defendant's Exhibit 1, Tab 2, at 100.
[20] Plaintiff's Exhibit 1, Tab 2, at 87.
[21] *Id.* at 7.
[22] *Id.* at 6.
[23] *Id.* at 10.
[24] *Id.* at 11.
[25] *Id.* at 22.
[26] *Id.* at 23.
[27] *Id.* at 27.
[28] *Id.* at 28.

On June 21, 2015, Plaintiff traveled with the girl scouts to Europe for a week trip in Paris and England that was scheduled during Plaintiff's sophomore year of high school. She testified that it was "very painful" to sit on the plane, walking around as a tourist was difficult, and she was unable to enjoy certain amusement park rides because the operators would not allow individuals with back-pain on the ride. On cross-examination, Plaintiff admitted that she had not complained of these problems to her physical therapist when she returned from the ten-day trip. Indeed, Nemours' records on July 6, 2015 indicate that Plaintiff "reported good tolerance to walking and traveling activities while away overall, but she did experience a few isolated episodes of low back pain and one episode of L LE symptoms."[29] Plaintiff reported "Level 3" pain at her July 6, 2015 appointment.[30]

On July 8, 2015, Plaintiff reported "Level 3" pain and numbness in her left leg pre-appointment and "Level 1" pain post-appointment.[31] On July 15, 2017, she reported "Level 0" pain and overall improvements in pain levels and activity tolerance; the physical therapist noted her exercises indicated "continued pain."[32] Plaintiff indicated "Level 1" pain post-treatment.[33] On July 17, 2015, Plaintiff indicated "Level 0" pain before and after treatment.[34] The Nemours' records state that "she went swimming yesterday with good tolerance and decreased back pain."[35] The "Assessment" section notes "improved activity tolerance and soft tissue mobility today, which is correlated to decreased pain."[36] During her July 20, 2015 visit, Plaintiff indicated that "some pain in her low back" occurred when she ran after a basketball, but she indicated "Level 0" pain

---

[29] *Id.* at 31.
[30] *Id.*
[31] *Id.* at 35-36.
[32] *Id.* at 43-44.
[33] *Id.* at 44.
[34] Defendant's Exhibit 1, Tab 2, at 161.
[35] *Id.*
[36] *Id.* at 162.

6

at the appointment.[37]  On July 22, 2015, Plaintiff again reported "Level 0" pain and "overall good activity tolerance" with stiffness complaints in her lower back.[38]  The Nemours' records indicate that Plaintiff "demonstrated improvements in lumbosacral mobility."[39]  Plaintiff indicated "Level 0" pain post-treatment.[40]

On July 27, 2015, Plaintiff complained of "increased L LE symptoms and low back pain over the weekend without any specific triggers."[41]  The Nemours' records indicate that these symptoms limited her "activity level."[42]  Plaintiff indicated "Level 0" pain before and after treatment.[43]  On July 31, 2015, Plaintiff reported that the back pain in her left side had resolved, but "some stiffness" remained.[44]  She indicated "Level 0" pain before and after treatment.[45]

On August 3, 2015, the Nemours' records note, "[s]he reports that she has been feeling better and denies pain in the L LE since last session."[46]  The records indicate that Plaintiff has "improve[d] core strength, but remains limited in ability to engage abdominals dynamically, which is limiting return to sport specific activities."[47]  Plaintiff indicated "Level 0" pain before and after treatment.[48]

During her August 10, August 14, and August 18, 2015 appointments, Plaintiff does not complain of pain in her lower back and indicates "Level 0" pain before and after treatment.[49] Nemours' records for August 14, 2015 indicate that Plaintiff "remains challenged in achieving self

---

[37] *Id.* at 163.
[38] Plaintiff's Exhibit 1, Tab 2, at 55.
[39] *Id.* at 56.
[40] *Id.*
[41] *Id.* at 59.
[42] *Id.* at 60.
[43] *Id.* at 59-60.
[44] Defendant's Exhibit 1, Tab 2, at 168.
[45] *Id.* at 168-69.
[46] *Id.* at 170.
[47] *Id.* at 171.
[48] *Id.* at 170-71.
[49] Plaintiff's Exhibit 1, Tab 2, at 71-72, 79-80; Defendant's Exhibit 1, Tab 2, at 174.

management of her back pain" because she failed to follow the physical therapist's recommendations for home exercise.[50] Likewise, despite the notation that Plaintiff "denies any pain today" during her August 18, 2015 appointment, her assessment notes, "[s]pasm in paraspinals remains present but is improved."[51] On August 24, 2015, Plaintiff's final physical therapy appointment, the Nemours' records state that Plaintiff "has achieved all goals at this time and denies any subjective complaints or activity limitations at this time."[52] Following this final appointment, Physical therapy appointments were discontinued and Plaintiff was "cleared for full physical activity without restrictions."[53]

At trial, Plaintiff testified that after the vehicle accident she was unable to compete in swimming competitions during the summer of 2015 and track competitions during the fall. She testified that she worked at Forwood Manor, a senior living community in Wilmington, baking and serving cupcakes, but had trouble lifting and carrying the cupcake trays. She also worked at Cupcake Heaven, but stopped working there in August 2015 because of school commitments. If her back bothered her at work, Plaintiff would take ibuprofen or sit down to alleviate the stress on her back. She testified that she had problems sleeping unless her posture was horizontally or vertically straight.

Plaintiff contends that although she received a scholarship to Indiana Institute of Technology for her athletic ability, she would have received a larger scholarship, or a scholarship to a more prestigious school if she was able to compete during the summer and fall of 2015.[54] She testified that she did not feel as though her lower back was completely healed even after the

---

[50] Defendant's Exhibit 1, Tab 2, at 174.
[51] Plaintiff's Exhibit 1, Tab 2, at 79-80.
[52] Defendant's Exhibit 1, Tab 2, at 178.
[53] *Id.* at 191.
[54] Plaintiff testified that a division two school, Tiffin University, offered her a larger scholarship after it received her track times during her senior year, but it was too late as she had signed with another school by this time.

8

physical therapy ended, so she did not compete in indoor triple jump during her senior year. She admitted to participating in the four-by-four relay, hurdles, and high-jump for the indoor track season, and four-by-four relay, hurdles, and triple jump for the outdoor track season.

During her freshman year of college, Plaintiff testified that she "did very well," placing All-American indoor and outdoor for hurdles, and eighth All-American indoor for triple jump. Currently, Plaintiff participates in the sixty meter hurdles, triple jump, and multi-events. She also testified on direct examination that she has been weight training this year and is "back to where [she] needs to be."

## Standard of Review

As trier of fact, the Court is the sole judge of the credibility of each fact witness and any other documents submitted to the Court for consideration.[55] If the Court finds that the evidence presented at trial contains conflicts, it is the Court's duty to reconcile these conflicts—if reasonably possible—in order to find congruity.[56] If the Court is unable to harmonize the conflicting testimony, then the Court must determine which portions of the testimony deserve more weight in its final judgment.[57] In ruling, the Court may consider the witnesses' demeanor, the fairness and descriptiveness of their testimony, their ability to personally witness or know the facts about which they testify, and any biases or interests they may have concerning the nature of the case.[58]

In civil actions, the burden of proof is by a preponderance of the evidence.[59] "The side on which the greater weight of the evidence is found is the side on which the preponderance of the evidence exists."[60]

---

[55] See Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr., et. al., 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000) (Welch, J.).
[56] See id.
[57] See id.
[58] See State v. Westfall, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).
[59] See Gregory v. Frazer, 2010 WL 4262030, at *1 (Del. Com. Pl. Oct. 8, 2010).
[60] See Reynolds v. Reynolds, 237 A.2d 708, 711 (Del. 1967).

## Discussion

Preliminarily, the Court notes that both parties agreed before trial—in accordance with the December 5, 2016 pretrial conference—that liability and proximate cause were not in dispute. The parties also agreed that expert testimony was unnecessary as Plaintiff conceded she was not arguing permanency.[61] Defendant agrees that Plaintiff suffered an injury, but disputes the severity. Defendant argues that Plaintiff's muscle spasms are the only "objective finding that would result in an award of damages."[62]

In Delaware, Defendant is liable for all damages caused by her tortious injury to Plaintiff.[63] This includes "aggravation of a preexisting condition."[64] Hence, Defendant is liable to Plaintiff for general compensatory damages based on bodily harm and emotional distress that resulted from Defendant's negligence.[65] Compensatory damages include pain and suffering.[66] Because Plaintiff does not allege that she suffered emotional distress because of her injuries, the Court will not address the mental aspect of pain and suffering damages.[67]

---

[61] Plaintiff's Opening Brief, Exhibit B; Defendant's Answering Brief at 1.

[62] Defendant's Answering Brief at 8. The rationale behind Defendant's argument seems misplaced. In reviewing a jury award of zero damages, Delaware Courts have found that an objective injury demands compensation; however, this does not prevent a trial court, as fact finder, from considering a plaintiff's "subjective complaints" if the Court deems the complaints credible. *See, e.g., Hedenberg v. Best*, 2005 WL 1953038, at *1-2 (Del. Super. July 11, 2005).

[63] *See F. Giovannozzi & Sons v. Luciani*, 18 A.2d 435, 436 (Del. Super. 1941).

[64] *See Benn v. May*, 2006 WL 8427234, at *4 (Del. Com. Pl. Mar. 9, 2006) (internal quotation marks omitted) (quoting *Maier v. Santucci*, 697 A.2d 747 (Del. 1997)).

[65] *See Jagger v. Schiavello*, 93 A.3d 656, 667 (Del. Super. 2014) ("General compensatory damages may be awarded without regard to out of pocket losses and are those such that the law presumes to be the natural and probable consequences of the defendants' wrongful conduct."); *see also* RESTATEMENT (SECOND) OF TORTS § 905 (1979).

[66] *See Re Bangs v. Follin*, 2016 WL 6875959, at *2 (Del. Super. Nov. 21, 2016) ("Both mental and physical pain and suffering may be recovered in a personal injury action where there is physical injury related to the tort . . . ."); RESTATEMENT (SECOND) OF TORTS § 904, cmt. c (1979) ("If bodily harm of any kind is alleged, physical pain and suffering resulting from it can be shown without any specific allegation. In other words, it is regarded as general damages.").

[67] *See Hendricks v. Trunfio*, 2000 WL 33653410, at *1 (Del. Com. Pl. Dec. 11, 2000) (addressing the physical pain aspects of pain and suffering damages); *see also Brewington v. Allstate Ins. Co.*, 2013 WL 7871591, at *2 (Del. Com. Pl. Jan. 17, 2013).

10

The Delaware Supreme Court has refused to calculate pain and suffering damages based on a *per diem* calculation that is fixed on a pre-determined daily rate.[68] The Supreme Court views the *per diem* calculation as arbitrary and speculative since each person's experience of pain is unique.[69] As "[t]here is no market price for a scar or for a loss of hearing since the damages are not measured by the amount for which one would be willing to suffer harm," the amount of recovery is discretionary.[70]

Instead of a rigid "mathematical index" that gives an "illusion of precision," the fact-finder should be guided by common sense.[71] In this regard, the inquiry is one of reasonableness.[72] To determine a reasonable amount the Court must evaluate the claim under the specific circumstances of the case.[73] The Restatement suggests:

> The length of time during which pain or other harm to the feelings has been or probably will be experienced and the intensity of the distress are factors to be considered in assessing the amount of damages. In determining this, all relevant circumstances are considered, including sex, age, condition in life and any other fact indicating the susceptibility of the injured person to this type of harm.[74]

The Court does not make its determination lightly—thorough consideration underlie the Court's following damage award. After careful examination of the medical records and consideration of Plaintiff's testimony, the Court finds that Plaintiff has proven by a preponderance of the evidence that she is entitled to $3,000 in damages. Plaintiff suffered a lower back injury as a result of the vehicle collision; however, her ability to compete immediately after her emergency room visit, her indicated pain level during her visit to Europe, self-assessments during physical therapy, and

---

[68] *See Henne v. Balick*, 146 A.2d 394, 397-98 (Del. 1958).
[69] *See id.* at 398.
[70] RESTATEMENT (SECOND) OF TORTS § 912 cmt. b (1979).
[71] *See* 2 STEIN ON PERSONAL INJURY DAMAGES TREATISE § 8:10 (3d ed. 1997); RESTATEMENT (SECOND) OF TORTS § 912 cmt. b (1979).
[72] *See Turner v. Vineyard*, 80 A.2d 177, 180 (Del. 1951) ("To overthrow an award of damages assessed by the trial judge, the defendants must show that it was so excessive as to be one that the trial court could not reasonably make.").
[73] *See Dana Cos., LLC v. Crawford*, 35 A.3d 1110, 1113 (Del. 2011).
[74] RESTATEMENT (SECOND) OF TORTS § 905 cmt. i (1979).

progress during physical therapy were factored into the Court's decision.[75] Finally, while Plaintiff was quite credible, the Court gave no weight to her speculative assertions that she would have received greater scholarships if she had not been injured. Plaintiff failed to prove these assertions by a preponderance of the evidence.

## Conclusion

For the foregoing reasons, the Court hereby enters judgment for Plaintiff in the amount of $3,000, plus pre- and post-judgment interest at the legal interest rate according to 6 *Del. C.* § 2301, *et seq.*

**IT IS SO ORDERED** this 25th day of September, 2017.

_____
John K. Welch, Judge

cc:     Ms. Tamu White, Chief Civil Clerk

---

[75] Plaintiff's positive attitude while treating, and cheerful disposition at trial, did not negatively affect the Court's analysis. *See Mills v. Telenczak*, 345 A.2d 424, 426 (Del. 1975) ("plaintiff's claim for damages is not limited by any failure on her part to complain of pain").

12