**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

**RICHARD F. STOKES**                                          **SUSSEX COUNTY COURTHOUSE**
*JUDGE*                                                                **1 THE CIRCLE, SUITE 2**
**GEORGETOWN, DE 19947**
**TELEPHONE (302) 856-5264**

February 20, 2018

Patrick Scanlon, Esquire                              Stephen P. Norman, Esquire
Darlene Wyatt Blythe, Esquire                    The Norman Law Firm
203 NE Front Street, Suite 101                    30838 Vines Creek Road, Unit 3
Milford, DE 19963                                        Dagsboro, DE 19939

RE: *Capitol Cleaners & Launderers Inc. v. Twining Restaurant Assoc. Inc.,*
C.A. No. S17C-06-021 RFS

DATE SUBMITTED: November 22, 2017

Dear Counsel:

This is my decision regarding Defendant Twining Restaurant Associates, Inc.'s Motion to

Vacate Default Judgment pursuant to Superior Court Civil Rule 60(b). The motion to vacate the

default judgment as to liability is denied for the reasons set forth herein. However, an inquisition

on the amount of damages to which plaintiff is entitled should be scheduled.

This is a breach of contract case wherein the Plaintiff, Capitol Cleaners & Launderers, Inc.,

("Capitol" or "Plaintiff") claimed the Defendant, Twining Restaurant Associates, Inc.,

("Nantucket"[1] or "Defendant") breached a service contract for linen cleaning services. Defendant

corporation is owned and operated by David Twining ("Twining"). Twining is also the managing

---

[1] Defendant Twining Restaurant Associates, Inc. operates under the name Nantucket Restaurant.

1

shareholder of Twining Lobster Shanty, Inc. ("Lobster Shanty"). Plaintiff corporation provided linen services to both Nantucket and Lobster Shanty.

Plaintiff filed its Complaint on June 21, 2017. The Complaint alleged the Defendant failed to pay a past-due bill in the amount of $5,213.97 and is responsible for liquidated damages in the amount of $57,539.69 as a result of early termination of its cleaning contract. The total amount demanded by the Plaintiff was $62,753.66, plus pre-judgment interest. The Summons and Complaint were served upon Twining on June 27, 2017 in person by the Sussex County Sheriff. No answer or entry of appearance was filed within the 20 days prescribed by law. Consequently, on August 16, 2017, Plaintiff obtained a Default Judgment pursuant to Superior Court Civil Rule 55 against the Defendant in the total amount of $72,688.25,[2] plus post-judgment interest. The difference between the principal demanded by the Complaint and that set forth in the Direction to Enter Default Judgment is $799.16. In October, 2017, the Sheriff attempted to serve the Defendant a Writ of Execution by Levy, but could not do so as Twining refused to open the restaurant and advised the Sheriff that no property inside the restaurant belonged to the business.[3] On November 1, 2017, an Entry of Appearance was made by Defendant's attorney. This Motion subsequently was filed on November 9, 2017.

In this Motion, Twining claims that after receiving a copy of the Complaint, he directed his bookkeeper on or about July 1, 2017 to "simply pay the outstanding and still somewhat disputed account balance."[4] He asserts the billing dispute between Capitol and Nantucket began in December 2016. Twining contends he believed the lawsuit was resolved after he paid the

---

[2] Direction to Enter Judgment by Default Under Rule 55 indicates judgment amounts to be paid as follows: Principal Debt: $61,954.50; Pre-Judgment Interest at 18.00% per annum from 03/06/2017 to 08/15/2017: $1,252.67; Attorney's Fees: $9,481.08.

[3] Writ Returned Non-Est on October 2, 2017.

[4] Mot. to Vacate Default Judgment, at ¶9 (Nov. 9, 2017).

outstanding balance of $4,005.67 in July 2017. An Entry of Default Judgment was made on or about August 16, 2017. At the time, he was managing two restaurants with over 100 employees during the busiest part of the summer season. Twining further asserts he was not aware of the liquidated damages claim in the Complaint and that there was no written contract between Capitol and Nantucket, or Lobster Shanty. Twining denies signing the service contract submitted by the Plaintiff, and asserts it is not his ordinary business practice to enter into a contract of this type.

Twining further contends no one other than himself has the authority or power to contractually bind either Nantucket or the Lobster Shanty. He denies knowing whose signature it is on the contract which was attached by the Plaintiff in its response to this Motion.

Plaintiff acknowledges that after the lawsuit commenced, the Defendant made a direct payment in the amount of $4,005.67, which was credited to the total amount owed. However, the Plaintiff did not provide a calculation or show how the payment was applied to the total amount sought.[5] Plaintiff argues Defendant simply ignored the process by not taking any appropriate actions in response to the Complaint or otherwise defend itself. Plaintiff contends Defendant has not satisfied its burden of showing excusable neglect, which is the first step a moving party must establish before the Court considers the other factors of a meritorious defense and prejudicial effect in determining whether to grant a motion to vacate a default judgment.

## STANDARD OF REVIEW

Superior Court Civil Rule 60(b) provides in relevant part as follows: "On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or

---

[5] There was no explanation provided as to why the principal amount in the Complaint ($62,753.66 or $66,003.10 when taking into account accrued interest in the amount of $3,249.44) did not match with the principal debt indicated in the Direction to Enter Judgment by Default ($61,954.50).

3

excusable neglect…."[6] "A petition to set aside a default judgment is addressed to the sound discretion of the Court."[7] There are three factors a trial court must consider in determining whether to set aside a default judgment: "first, whether culpable conduct of the defendant led to the default and, if so, was it excusable; second, whether the defendant has a meritorious defense; and third, whether the plaintiff will be prejudiced."[8]

Excusable neglect is defined as neglect which might have been the act of a reasonably prudent person under the circumstances.[9] The Court must examine the circumstances of each case in order to determine whether the conduct of the moving party was the conduct of a reasonably prudent person.[10] A defendant cannot have a judgment vacated when the defendant simply ignored the process.[11] The Court only should consider the elements of a meritorious defense and prejudice after a satisfactory showing of excusable neglect in failure to answer the complaint.[12]

**DISCUSSION**

a) Excusable Neglect

The facts and circumstances of Defendant's inaction do not justify as excusable neglect. Twining, as Defendant corporation's agent, is a businessman with at least two restaurant establishments. He was aware of the lawsuit against Nantucket, and had knowledge of the default judgment that was entered against Nantucket, and yet, despite the advice of his "attorney

---

[6] Super. Ct. Civ. R. 60(b).
[7] *Cohen v. Brandywine Raceway Ass'n,* 238 A.2d 320, 325 (Del. Super. Ct. 1968).
[8] *Stevenson v. Swiggett,* 8 A.3d 1200, 1204-05 (Del. 2010).
[9] *Cohen*, 238 A.2d at 325.
[10] *Keith v. Melvin L. Joseph Const. Co.*, 451 A.2d 842, 846 (Del. Super. Ct. 1982).
[11] *Perry v. Wilson*, 2009 WL 1964787, *1 (Del. Super. Ct. July 8, 2017).
[12] *Id.* (See also *Lee v Charter Communications VI, LLC et al*, 2008 WL 73720, *2 (Del. Super. Ct. Jan. 7, 2008); *Perry,* 2009 WL 1964787, *1; *Parkway Gravel, Inc. v. US Lubes, LLC,* 2014 WL 1760015, *2 (Del. Super. Ct. Apr. 15, 2014)).

acquaintance"[13] did not retain legal counsel for the business. Twining did not respond to the lawsuit in any meaningful way until he was subpoenaed in connection with the execution on the judgment, which was three months after the entry of judgment. Upon service of process, a reasonably prudent person would have at least consulted an attorney to assess his legal rights and obligations.

Twining's argument that he was under the belief that the payment of $4,005.67 resolved the lawsuit is unpersuasive. The Complaint clearly stated the Plaintiff was seeking a total amount of $62,753.66 plus interest, which included $5,213.97 of an overdue bill, and $57,539.69 in liquidated damages. The question of enforceability of the liquidated damages aside, the Defendant's purported payment did not cover the past-due bill.

A parallel could be drawn between this case and *Financial & Brokerage Services, Inc. v. Robinson Insurance Assoc. Inc.,*[14] where the Court held that the registered agent's conduct of writing letters to the Plaintiff and its attorney instead of filing any documents with the Court did not meet the legal requirements of Superior Court Civil Rule 55. In *FBS v. RIA,* the registered agent for RIA, Mr. Robinson, did not retain an attorney to represent the corporation to defend the lawsuit. Instead, after reading the complaint, he wrote a letter to the plaintiff and its attorney stating "I am answering the complaint."[15] Mr. Robinson allegedly made proposals to settle the judgment, which the plaintiff rejected. Importantly, he did not file anything with the Court. He eventually contacted an attorney after the Sheriff arrived at his residence to seize the property. The Court held that his letters to the plaintiff in response to the company did not meet the requirements of Rule 55, and he acted unreasonably and carelessly. His actions could not be considered

---

[13] Def's Mot. to Vacate Default Judgment, ¶8 (Nov. 9, 2017).
[14] 1990 WL 199503 (Del. Super. Ct. Nov. 21, 1990).
[15] *Id.* *1.

excusable neglect under Rule 60(b).[16]  Similarly in the present case, Twining's purported payment in response to the Complaint does not qualify as an appearance or pleading under Rule 55 to justify vacating the default judgment.

Further, this case differs from *McMartin v. Quinn*,[17] where the Court found Defendant Churchville's reliance on Defendant Quinn in responding to and resolving the lawsuit was reasonable, thus, concluding "this is not a case in which Plaintiff [sic] [Defendant] simply ignored the ongoing proceedings.[18]  In *McMartin*, Defendant Quinn and Defendant Churchville were husband and wife who were the Operations Manager and the President, respectively, of the Defendant corporation.  Churchville relied on her husband, Quinn to handle the lawsuit and believed he had retained an attorney and responded to the complaint after he repeatedly assured her so.  The Court found "the circumstances of Quinn and Churchville's relationship, in concert with their respective roles in the corporation provides sufficient ground to persuade the Court that Churchville's reliance on Quinn was reasonable."[19]  Conversely, the present case offers no evidence that any other person had the duty or authority other than Twining to answer the lawsuit on behalf of the Defendant corporation.  Unlike Churchville, Twining simply ignored the legal proceedings without justification.

Regarding the timing of Defendant's Motion to Vacate, the delay in filing this Motion was unreasonable.  In *Schremp v. Marvel*,[20] the Supreme Court acknowledged that a movant has the obligation of acting without unreasonable delay in bringing a motion to vacate a default judgment. After the default judgment was entered against the Defendant, Twining was notified by letter from

---

[16] *Id.* *4.
[17] 2004 WL 249576 (Del. Super. Ct. Feb. 3, 2004).
[18] *Id.* *2 (citations omitted).
[19] *Id.*
[20] 405 A.2d 119, 120 (Del. 1979)

Plaintiff's attorney of the judgment on or about August 16, 2017.[21] Even if Twining missed the Plaintiff's letter regarding the default judgment, evidence shows Twining was definitely aware of the default judgment when the Sheriff appeared at Nantucket to place a levy on the property in execution of the judgment on October 2, 2017. According to the Sheriff's Return, Twining refused to open the restaurant, stating that all property within was personally owned and does not belong to the business. Defendant made its first court filing on November 1, 2017. The Court in *Schremp* "measured reasonableness by comparing the amount of time that had passed (i.e. time of defaulting party's actual knowledge or dismissal to time of filing of motion) to the mandatory time for appealing adverse judgment (thirty days), moving for a new trial (ten days) or reargument (five days)."[22] In this case, nearly three months passed from the time the default judgment was entered to the time this Motion was filed. Even if Twining did not receive Plaintiff's letter on August 16, 2017, he was aware of the default judgment by October 2, 2017. The Motion to Vacate came more than thirty days thereafter. Thus, the Court finds that Defendant's Motion to Vacate was untimely.

In order for the Court to consider the issue of whether Defendant has a meritorious defense and whether Plaintiff would be prejudiced by an order vacating the default judgment, the Defendant must first satisfy the burden of proving its failure to answer the complaint constitutes excusable neglect.[23] Twining has failed to establish the threshold requirement that his actions were that of a reasonably prudent person acting as an agent of the Defendant corporation. Because Defendant did not establish excusable neglect, the Court need not address the meritorious defense and substantial prejudice prongs of the *Stevenson* test in setting aside a default judgment.

---

[21] Ex. E, Pl's Resp. to Def's Mot. to Vacate Default Judgment (Nov. 22, 2017).
[22] *McMartin¸* 2004 WL 249576, *3 (citation omitted).
[23] *See* 4 n.11.

b) Judgment Amount

The Court is guided by two significant values implicated by Rule 60(b): "the first is ensuring the integrity of the judicial process and the second, countervailing, consideration is [sic] the finality of judgments."[24] In the interest of justice, and to ensure the accuracy of the judgment amount against the Defendant, it is necessary for the Court to hold an inquisition hearing pursuant to Superior Court Civil Rule 55(b)(2) to determine the amount of damages for which the Defendant is liable. Pursuant to Rule 55(b)(2), the Court may conduct an inquisition hearing if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment of evidence or to make an investigation of any other matter…."[25] Twining contends, prior to the entry of default judgment, he directed his bookkeeper to pay the outstanding bill. There was a dispute as to how much Nantucket and Lobster Shanty each owed the Plaintiff. An understanding was reached, and Twining paid $4,005.67 to satisfy Nantucket's debt; therefore, believing it would end the lawsuit. If Twining's contentions are true, the amount paid must be credited towards the principal amount owed.

In addition, it is unclear from the face of the contract what are its terms and conditions regarding liquidated damages in the event of early termination of the contract. "The standard remedy, or damages, for a breach of contract is based upon reasonable expectations of the parties, in an amount that is equal to the loss in value of defendant's nonperformance, or breach."[26] Damages for a breach of contract must be proven with reasonable certainty.[27] It is unclear as to how Plaintiff calculated the amount of liquidated damages it claims. At least one element

---

[24] *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.,* 785 A.2d 625, 634 (Del. 2001) (citations omitted).
[25] *Jagger v. Schiavello*, 93 A.3d 656, 659 (Del. Super. Ct. 2014).
[26] *Dill v. Dill*, 2016 WL 4127455, *1 (Del. Super. Ct. Aug. 2, 2016) (citing *West Willow-Bay Court, LLC v. Robino-Bay Court Plaza LLC.,* 2009 WL 458779, at *4 (Del. Ch. Feb. 23, 2009)).
[27] *Id.*

contributing to the confusion is the amount of time left for the performance of the contract. Therefore, an inquisition hearing is necessary for the Court to determine the amount of damages owed to the plaintiff based on a preponderance of the evidence.[28]

## CONCLUSION

Based on the foregoing reasons, the Court finds Defendant's failure to respond is not excusable neglect, and the Motion was filed after unreasonable delay. Defendant's Motion to Vacate Default Judgment as to liability is **DENIED**. However, for the foregoing reasons, the Court will set the matter down for an inquisition hearing to determine the amount of damages. The parties are directed to contact Chambers to schedule this hearing.

**IT IS SO ORDERED.**

Very truly yours,

Richard F. Stokes

---

[28] *Jagger,* 93 A.3d, 659 (citing *Williams v. County Bus Service, Inc.,* 1990 WL 1242521 (Del. Super. Ct. Apr. 30, 1990)).