**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| G-WILMINGTON ASSOCIATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-0090-LM |
| | ) | |
| RIVERSIDE HOSPITAL | ) | |
| REDEVELOPMENT, LLC, | ) | |
| LANDON CONSTRUCTION, LC, | ) | |
| CONSTRUCTION DELAWARE, INC., | ) | |
| and the CITY OF WILMINGTON, | ) | |
| | ) | |
| Defendants. | ) | |

**POST-TRIAL FINAL REPORT**

Final Report: October 31, 2025
Date Submitted: June 9, 2025

Christopher P. Simon, David G. Holmes, CROSS & SIMON, LLC, Wilmington, DE; *Counsel for Plaintiff G-Wilmington Associates*.

Stephen A. Spence, Sean A. Meluney, MELUNEY ALLEMAN & SPENCE, LLC, Wilmington, DE; *Counsel for Defendant Riverside Hospital Redevelopment, LLC and LC Construction Delaware, Inc.*

William E. Gamgort and Carmella Cinaglia, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; *Counsel for Defendant City of Wilmington.*

**Mitchell, M.**

This matter comes before the Court on a dispute arising out of an easement agreement that allowed a right of access on property owned by the plaintiff, the owner of a shopping center. The plaintiff brings this action against three defendants, a neighboring housing developer, a construction company, and the City of Wilmington, alleging a breach of agreement, trespass, and related claims stemming from the alleged unauthorized extension of an easement across the plaintiff's property. The plaintiff contends that the defendants exceeded the scope of the easement as agreed and thereby encroached upon and trespassed onto the plaintiff's property. For reasons explained in greater detail below, I find there is a breach of the easement agreement and trespass onto the Plaintiff's property, however I do not find it appropriate to terminate the agreement and order the removal of the sidewalk.

## I.    BACKGROUND[1]

Plaintiff, G-Wilmington Associates (hereinafter, "GWA") is the owner of the Miller Road Commons shopping center (hereinafter, the "GWA Property").[2] LC Construction (hereinafter, "LCC") and Riverside Housing Redevelopment (collectively, "Defendants") are companies with their principal place of business in

---

[1] The facts in this report reflect my findings based on the record developed at trial. I grant the evidence the weight and credibility I find it deserves. Citations to the transcript will be in the form of "Tr. __." Citations to the Docket are cited in the form of "D.I. __". Deposition transcripts are cited as "[Last Name] Dep. Tr.__." The parties submitted joint exhibits numbered 1-138. Citations to the joint exhibits are in the form of "JX__."

[2] Tr. 7:20–24; D.I. 82 at ¶B1; JX 97.

Delaware.[3] In May 2019, Defendant, Riverside Housing Redevelopment (hereinafter, "RHR") purchased a 4.6-acre parcel adjacent to the GWA Property (hereinafter, the "RHR Property").[4] The City of Wilmington (hereinafter, the "City") assisted in orchestrating the purchase of the RHR Property and is the third defendant here.[5]

## A. The Properties

The 17.5-acre GWA Property, located at 3600 Miller Road in New Castle County, Wilmington, Delaware, contains approximately eight or nine stores comprised of about 165,000 square feet of rentable space.[6] GWA asserts they acquired this Property in 1980.[7] The shopping center, as it stands today, is located between Miller Road to the north, Franklin Place to the south, and West 37th Street to the east side of the property, outside the boundaries of the City.[8]

The RHR Property is located at 710 Lea Boulevard, Wilmington, Delaware.[9] Unlike the GWA Property, the RHR Property is within the boundaries of the City of

---

[3] D.I. 82 at 6.

[4] Tr. 308:15–16; D.I. 82 at ¶B8.

[5] D.I. 82 at ¶A4.

[6] Tr. 15:3–10; D.I. 82 at ¶B1.

[7] Tr. 9:18–20.

[8] Tr. 9:5–8; Tr. 10:4–11:5; JX 32, Ex. A; *see also* D.I. 82 at 6 ("The GWA Property is outside the established corporate limits of the City and is, instead, in unincorporated New Castle County.").

[9] D.I. 82 at 7.

Wilmington, located to the east of both the GWA Property and West 37th Street.[10]

RHR acquired the RHR Property in May 2019 with the intention of building multi-family apartments.[11]

West 37th Street (hereinafter, "W. 37th St."), is a finished roadway on the GWA Property, connecting Franklin Place with Miller Road.[12] It is a twenty-six foot wide road that runs the length of the parcel owned by GWA, and it is identified as a public right of way dedicated by GWA in a subdivision plan recorded in 1989.[13] Along W. 37th St. sits a 10-foot construction easement on either side, that was expressly dedicated in the GWA recorded subdivision plan and appears on subsequent plans of the property.[14] There is conflicting testimony on the purpose of the construction easement with the GWA stating and providing support that it is to provide the State space for storage of materials and access to W. 37th St. when it is providing maintenance to the road,[15] and the Defendants offering supporting

---

[10] Tr. 41:8–11.

[11] D.I. 82 at ¶B7.

[12] Tr. 10:12–17; Tr. 11:7–15; JX 32, Ex. A; D.I. 82 at ¶B3; JX 94.

[13] Tr. 10:4–22; Tr. 11:7–15; JX 32, Ex. A; D.I. 82 at ¶B.3; JX 94; JX 126.

[14] JX 104 at 3–4; JX 94; JX 96; JX 97; JX 98.

[15] Tr. 216:4–23.

evidence and testimony that it is a permanent construction easement that gives the State the right to construct a sidewalk.[16]

GWA claims to own this right-of-way and exhibits its ownership of the street through maintenance.[17] Yet GWA cannot recall specific instances of maintaining, paving, or fixing potholes, and a contract for plowing and shoveling displays that such services do not extend to this roadway.[18] DelDOT does not claim to have maintenance rights over W. 37th St..[19] The street is a private road that has been dedicated to public use, meaning it can be used by the public and cannot be closed off to the public.[20]

### B. The Declaration of Voluntary Assurances

In January 2019, before RHR purchased the RHR Property, the former Mayor of the City of Wilmington, Michael Purzycki contacted Mr. David Rosen, the executive vice president of Rosen Associate Management Corp. and agent for

---

[16] Donlon Dep. Tr. 104:13–24 (indicating uncertainty as to what type of construction easement was present here but that "currently DelDOT asked for a permanent easement on most jobs that run adjacent to rights-of-way for them to construct sidewalks or pedestrian paths[.]"); Rudy Dep. Tr. 112:14–17 ("Q. Okay. So fair to say that DelDOT is the one who has rights under the permanent construction easement? A. Yes.").

[17] Tr. 52:15–18; *see* Tr. 53:14–54:7 (referencing JX 119 at 3, No. 5).

[18] Tr. 58:10–19; JX. 59 (showing that the snowplow vendor does not shovel or plow on W. 37th St. right-of-way).

[19] Tr. 202:23–203:7; JX 104 at 4–5; Hastings Dep. Tr. 71:3–72:9.

[20] Hastings Dep. Tr. 28:16–30:4; D.I. 82 at ¶B3; *see also* JX 63.

4

GWA.[21] In doing so, the mayor discussed the possibility of RHR's planned 165-unit, three-building, upscale market-rate housing project, scheduled to begin within the next six months.[22] The mayor also specifically mentioned that he wanted to explore the possibility of an easement over a portion of the GWA Property to have a secondary entrance to the proposed development site.[23] Mr. Rosen believed that this would benefit the shopping center and tenants by increasing the flow of potential customers.[24] On January 15, 2019, Mr. Rosen received a subsequent letter from the mayor, with the City of Wilmington letterhead, memorializing the verbal discussions and urging the importance of the easement over GWA's property to the City.[25] The mayor emailed GWA on February 19, 2019, which included renderings of RHR's proposed housing project.[26] The renderings consisted of a schematic showing three buildings with two entrances, a parking lot, and a swimming pool.[27]

During this time, the mayor also facilitated a negotiation with RHR and Brandywine Hills Community Association (hereinafter, "BHCA"), a neighborhood within the City boundaries and next door to the two properties, who expressed

---

[21] Tr. 12:14–21.

[22] Tr. 13:1–11.

[23] Tr. 14:3–9.

[24] Tr. 14:17–24.

[25] Tr. 16:1–16; JX 5.

[26] Tr. 17:12–18:11; JX 11.

[27] Tr. 17:12–18:11; JX 11.

concern with the proposed new construction of multi-family apartments on the RHR Property.[28] When RHR purchased its property in 2019, it was not zoned for multi-family housing but zoned as R-2 residential, for single-family housing.[29] To obtain the necessary rezoning for the construction of the multi-family housing on RHR's Property, on May 3, 2019, RHR entered into the Declaration of Voluntary Assurances (hereinafter, the "DVA") with the City and BHCA.[30] The DVA was signed by Louis J. Capano III, CEO of Capano the parent company of RHR and recorded on May 6, 2019.[31] The BHCA required, through the execution of the DVA, the construction of new sidewalk on the GWA Property along W. 37th St. and the construction of a secondary access point to the RHR Property onto W. 37th St..[32]

GWA is not a party to the DVA.[33] Nonetheless, the mayor's assistant emailed Mr. Rosen a draft of the DVA before its execution on March 25, 2019.[34] The draft sent to Mr. Rosen is identical to the final executed DVA with the only difference being the dates at the top of the document.[35]

---

[28] JX 23; JX 24; *see* JX 25; Tr. 309:14–310:16; Tr. 311:21–313:7.

[29] JX 19 at 1; Tr. 466:11–19.

[30] Tr. 471:20–472:5; JX 25.

[31] Capano Dep. Tr. 6:20–7:6; Capano Dep. Tr. 9:8–21; D.I. 82 at ¶B8.

[32] JX 25 at §2(a)–(b), (d); *see* JX 9.

[33] Tr. 135:24–136:6; *see* JX 25.

[34] JX 22; Tr. 96:4–99:17.

[35] JX 22; JX 25; Tr. 314:4–7.

6

## C.     The Easement Agreement

On April 22, 2020, GWA and RHR entered into the Easement Agreement.[36] The City is not a signatory to the Easement Agreement.[37] The easement is approximately ten feet wide and one hundred and ten feet long running along the east side of W. 37th St..[38] The easement, like the GWA Property, lies within unincorporated New Castle County and outside the boundaries of the City.[39]

GWA and RHR agreed that RHR would pay $25,000 as partial consideration for the granting of the easement and then thereafter the RHR parcel owner would pay $2,000 per month, increasing on a compounding basis by 12% every five years, for as long as the Easement Agreement remained in place.[40] RHR has made all required payments under the Easement Agreement, even those required of it throughout the span of this litigation.[41] GWA believes the agreement was only for building the secondary vehicular access between the two properties, while RHR

---

[36] D.I. 82 at ¶B11; JX 32 at 1.

[37] D.I. 82 at ¶B11; JX 32 at 1.

[38] D.I. 82 at ¶B12; JX 32, Ex. B; Tr. 22:4–17.

[39] Tr. 9:23–10:3; Tr. 41:8–11.

[40] JX 32 at §3.

[41] Tr. 55:1–6.

7

entered the agreement to facilitate the construction projects described in the DVA, which include a sidewalk running along W. 37th St..[42]

The Easement Agreement permits RHR to use GWA's Property as a means of secondary vehicular access to the RHR Property.[43] The Easement Agreement, in Section 2.1, provides for an easement "for the purpose of facilitating pedestrian and vehicular access, ingress, egress, and regress in, on, to, from, upon, under, across, over, and through that portion of [the Easement Area.]"[44] Section 2.2 of the Easement Agreement states that "[t]he RHR Parcel Owner shall have the right, at its sole cost and expense, to install, construct, use, connect, maintain, repair, and replace such improvements on the Easement Area . . . as are necessary to connect the RHR Parcel to the public right of way identified as 37th Street on the RHR Plan, and/ or as desirable to the RHR Parcel Owner for the use of the Permanent Easement; provided" they abide by further requirements therein.[45]

RHR, under the agreement, is to obtain "all certificates, approvals, permits, licenses and other consents respecting the Easement Area that are required by any

---

[42] D.I. 93 at 4 ("[I]nstalling approximately 875 feet of sidewalk and curbing on GWA's property, [] was i) not permitted by the Agreement[.]"); JX 101 at 14 ("The Agreement was intended to provide a curb cut for secondary egress to RHR's property, but such access did not give anyone the right to build a sidewalk the entire length of 37th Street[.]"); Tr. 488:13–20; Tr. 488:24–489:22.

[43] Tr. 25:23–26:5; Tr. 488:13–20; *see also* JX 32.

[44] JX 32 at §2.1.

[45] JX 32 at §2.2.

8

local, county, state or federal agencies or other authorities having jurisdiction over the Easement Area and/or [the GWA Property,]" and must also procure and maintain insurance for the duration of the agreement "in amounts and coverages reasonably required by [GWA.]"[46] RHR agreed to provide all plans and specifications for the installation and maintenance of the easement to GWA for its approval before the start of construction.[47] The Easement Agreement requires that construction is to be completed within 36 months of the execution of the agreement, and if the construction was not completed within the 36-month period GWA was granted the right to terminate the agreement.[48]

## D. The Assignment

While pleased that the DVA and Easement Agreement contained commitments from RHR to construct and install the secondary access from W. 37th St. and sidewalk along W. 37th St., the BHCA was now concerned that RHR might not follow through with such commitments, jeopardizing the future of the secondary access point and sidewalk.[49] On November 14, 2020, a representative of BHCA emailed the former deputy chief of staff of Mayor Purzycki's administration, John Rago, expressing concern over the security of the Easement Agreement due to the

---

[46] JX 32 at §2.5; JX 32 at §15.1.

[47] JX 32 at §2.4.

[48] Tr. 489:23–490:6; JX 32 at §6.

[49] Goff Dep. Tr. 62:3–13.

monthly payment requirement.[50] RHR spoke with its attorneys contemplating a resolution that would recognize the easement formally, however RHR never went forward with getting the resolution approved by the City council.[51] A series of communications took place between December 6, 2020 and December 8, 2020 between Mayor Purzyki and Martha Carper, wife of former senator of Delaware and resident of BHCA, regarding a draft of a partial assignment of the Easement Agreement to the City.[52]

On December 10, 2020, RHR entered into an assignment agreement (hereinafter, the "Assignment") with the City regarding the Easement Agreement for the GWA Property, despite GWA not being a party to this agreement.[53] The Assignment is signed by the mayor and Mr. Capano III, as representative for RHR.[54] GWA was unaware of the Assignment at the time of its execution and was not informed of its existence until discovery for the present litigation.[55]

The agreement grants the City the right to pay expenses due to GWA, to cure any breach of the easement, and to construct or install improvements on the

---

[50] JX 34; Tr. 495:20–496:16; Tr. 497:2–16.

[51] Tr. 501:4–20; JX 35.

[52] JX 38; Tr. 504:5–505:13.

[53] D.I. 82 at ¶¶13–14; JX 41; Tr. 117:4–118:17.

[54] JX 41; Tr. 506:3–10.

[55] Tr. 117:8–14.

easement.[56] The Assignment also provides that "[i]n the event [RHR] fails to make or deliver any payments" or "fails to cure any breach of the Easement following written notice of such breach from GWA," then the City has "the right to make or deliver such payments" and "cure any such breach[.]"[57] The City is also assigned "the right to construct and install the Easement Area Improvements pursuant to Section 2 of the Easement[,]" in the even that RHR "fails to complete the construction and installation of the Easement Area Improvements within thirty-six (36) months from the date of the Easement as required pursuant to Section 6 of the Easement[.]"[58]

### E.    The Construction of the Entrance and the Sidewalk

The facts in relation to the construction in this case have, by in large, been stipulated to.[59] Landon Construction, a subcontractor for LCC, constructed and installed the entrance, curbing, sidewalks, and ramps within the GWA Property, completing their work no later than June 5, 2022.[60] The entrance connects the RHR Property to the GWA Property, crossing over the 10 foot construction easement,

---

[56] JX 41 at §§1.1–1.3.

[57] JX 41 at §§2.1.1–2.1.2; Tr. 507:3–8.

[58] JX 41 at §2.1.3.

[59] *See* D.I. 82 at ¶¶B16–23.

[60] D.I. 82 at ¶¶B16–17.

onto the easement area, and then encroaching onto the 26-foot-right of way.[61] No permits were obtained from New Castle County, DelDOT, or the City for any of the aforementioned construction within the GWA Property.[62] RHR did have the curbs inspected by Geo Technology Associates, who reported that the subgrade was acceptable to place the curbs.[63] GWA has not contracted with any of the parties here regarding the installation of the sidewalk and curbing outside the easement area along W. 37th St. and GWA was not contacted, before the installation of the sidewalks and curbing to expressly state that the sidewalks and curbing would be installed.[64]

GWA asserts that the sidewalk as constructed runs parallel to RHR's property on W. 37th St. and does not actually provide a path for access onto RHR's Property.[65] There are portions of the constructed sidewalk not built within the designated easement area.[66] On December 30, 2022, January 12, 2023, and April 27, 2023, former counsel for GWA sent letters to RHR providing notice of RHR's breaches of

---

[61] Tr. 217:5–20.

[62] D.I. 82 at ¶B18; Tr. 325:19–327:1 (referencing JX 22, Ex. B); Tr. 424:19–425:15 (referencing JX 44).

[63] Tr. 327:2–328:8 (referencing JX 46).

[64] D.I. 82 at ¶¶B20–21.

[65] D.I. 101 at 14; JX 101.

[66] Tr. 287:10–22; Tr. 354:16–355:12; Tr. 422:24–423:23 (referencing to JX 29); Tr. 426:12–427:2 (referencing JX 44); *see also* JX 101.

the Easement Agreement, by constructing hundreds of feet of sidewalks on the "Shopping Center Parcel outside of the easement Area, without the consent of GWA and, on information and belief, without having obtained the proper permits or government approvals."[67] GWA demanded that RHR cure those breaches.[68]

In a June 2023 letter from GWA's former counsel, GWA provided RHR of a notice of termination of the Easement Agreement between RHR and GWA and demanded damages because of the sidewalk outside the easement and easement entrance's construction without the proper permits and approvals.[69]

### F. The Maintenance Agreement

In a January 2023 letter, former counsel for GWA advised RHR that after checking with the City of Wilmington and DelDOT, DelDOT confirmed that it lacks jurisdiction over W. 37th St., advising GWA to turn to RHR for more information.[70] The letter further states that although the sidewalks were not constructed by RHR, but rather by Landon Construction at the direction of LC Construction, RHR cannot avoid its responsibility by simply delegating or subcontracting its works to affiliates

---

[67] Tr. 87:1–11; JX 52; JX 53; JX 62.

[68] Tr. 84:11–14; JX 52.

[69] Tr. 90:12–21; JX 62.

[70] Tr. 88:12–24; JX 53.

or third parties.[71] LC Construction is an affiliate of Capano Management, and performed the work at the direction of RHR and/or Capano Management.[72]

In May 2023, the City and DelDOT discussed the possibility of the City being delegated maintenance responsibility over W. 37th St. and be assigned "jurisdictional authority over the same area."[73] On December 21, 2023, the City and DelDOT entered an agreement (hereinafter, "Maintenance Agreement").[74] The City claims through this agreement and through the 10-foot construction easement running parallel to W. 37th St., they have taken on the municipal authority and control over improvements on the W. 37th St. Right of way.[75] The Maintenance Agreement provides for the authorization of the City to maintain and improve W. 37th St..[76] The Maintenance Agreement may be terminated within "30 days following written notice by either party to the other party of an intent to terminate[.]"[77]

---

[71] Tr. 89:1–10; JX 53.

[72] Tr. 89:1–6.

[73] JX 63.

[74] D.I. 82 at ¶B27; JX 82; JX 83.

[75] D.I. 97 at 49.

[76] JX 83 at §§1–3.

[77] JX 83 at §4. (The City sent GWA a letter, at some point, informing them that the sidewalk next to W. 37th St. "is part of the City of Wilmington Right of Way and cannot be removed," and is to be "maintained by GWA[,]" however it is unclear whether this letter was sent before or after the execution of the Maintenance Agreement.); JX 108; Tr. 40:20–41:15; Tr. 621:24–622:14.

### G. Procedural Posture

On February 1, 2024, GWA filing its verified complaint against the three named defendants.[78] The complaint asserts four claims: breach of agreement, quiet title, injunctive relief, and trespass.[79] On March 21, 2024, RHR and LC Construction jointly filed their answer, denying all allegations and asserting counterclaims for declaratory judgment.[80] That same day, defendant City of Wilmington filed its answer, raising multiple affirmative defenses, including failure to state a claim, the doctrine of laches, estoppel, acquiescence, ratification, and waiver.[81] GWA answered the counterclaims on April 17, 2024.[82]

On January 9, 2025, about a month before trial, the City of Wilmington requested permission to move for summary judgment and a stay of trial.[83] GWA urged the Court to proceed to trial without delay, arguing that summary judgment proceedings would unnecessarily prolong the case.[84] A teleconference regarding the City of Wilmington's motion for leave to file for summary judgment was held on

---

[78] D.I. 1; *see* D.I. 82 at ¶I10 (Landon Construction was included as a defendant, but the plaintiff was not able locate a registered agent to effectuate service and eventually learned that Landon Construction no longer operates or exists.).

[79] D.I. 1.

[80] D.I. 10.

[81] D.I. 11.

[82] D.I. 16.

[83] D.I. 64.

[84] D.I. 69.

January 21, 2025 at which the Court denied the motion for leave to move for summary judgment.[85]

The originally scheduled two-day trial was held on February 11, 2025 and February 12, 2025.[86] It was determined that a third day for the trial was necessary, and the final trial day was held on February 28, 2025.[87] Post trial briefing was completed on June 9, 2025, and I took this matter under advisement.[88]

## II. ANALYSIS

"An easement is a non-possessory interest in real property, granted for a particular purpose, enforceable of right and not depend[e]nt for its continued existence on the will of the grantor."[89] "An express easement is created if the document 'contains plain and direct language evidencing the grantor's intent to create a right in the nature of the easement.'"[90] "Documents conveying an interest in

---

[85] D.I. 73.

[86] D.I. 88.

[87] D.I. 85; .D.I. 88; D.I. 89.

[88] D.I. 93; D.I. 95; D.I. 97; D.I. 101.

[89] *Coker v. Walker*, 2013 WL 1858098, at *3 (Del. Ch. May 3, 2013).

[90] *Reybold Venture Gp. IX, LLC v. Summit Plaza Shopping Ctr., LLC*, 2025 WL 658760, at *9 (Del. Ch. Feb. 18, 2025) (ORDER) (quoting *Black v. Staffieri*, 2014 WL 814122, at *2 (Del. Feb. 27, 2014)).

land 'are specialized forms of contract, and like other contracts are not subject to construction unless the language is ambiguous.'"[91]

## A. RHR is in breach of the Easement Agreement.

A plaintiff pleading breach of contract must prove by a preponderance of the evidence: "(1) the existence of a contract, (2) the breach of a contractual obligation, and (3) resulting damages."[92] "The Agreement is the appropriate starting point for determining the rights and duties of the parties."[93] "When determining the scope of a contractual obligation and measuring the parties conduct against that obligation to determine breach, 'the role of a court is to effectuate the parties' intent.'"[94] "When interpreting a contract, this Court will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as whole and giving effect to all its provisions."[95]

---

[91] *Buckeye P'rs, L.P. v. GT USA Wilm., LLC*, 2022 WL 906521, at *30 (Del. Ch. Mar. 29, 2022) (quoting *Jestice v. Buchanan*, 1999 WL 962591, at *2 (Del. Ch. June 14, 1999)).

[92] *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *9 (Del. Ch. June 11, 2020) (citing *Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*, 2011 WL 549163, at *2 (Del. Ch. Feb. 16, 2011)).

[93] *Georgetown Crossing LLC, v. Ruhl*, 2006 WL 3720134, at *6 (Del. Ch. Dec. 5, 2006).

[94] *In re Anthem-Cigna Merger Litig.*, 2020 WL 5106556, at *90 (Del. Ch. Aug. 31, 2020) (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).

[95] *N. Am. Leasing, Inc. v. NASDI Hldgs., LLC*, 276 A.3d 463, 467 (Del. 2022); *see also Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) ("Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning.").

If the document conveying an interest in land is ambiguous the Court will look to grantor's intent "in the light of the intent of the parties as determined by the facts and circumstances surrounding the transaction," otherwise known as extrinsic evidence.[96] "The contract's construction should be that which would be understood by an objective reasonable third party" and "[a]bsent some ambiguity, Delaware courts will not destroy or twist contract language under the guise of construing it."[97]

The parties here do not dispute formation of either the Easement Agreement or the partial assignment agreements that the Plaintiff brings its breach of contract claims under.[98] The question left for the Court is therefore one of interpretation of the language within the documents and whether the defendants failed to perform their obligations. In this section, I address the Plaintiff's claims for breach under sections 2.1, 2.2, 2.4, 2.5, and 15.1, and I save my analysis of the claim for breach of section 6 for the portion of my analysis that addresses the Plaintiff's termination rights under the agreement.

---

[96] *Buckeye P'rs, L.P.*, 2022 WL 906521, at *30 (citing *Francis v. Macklin*, 1990 WL 100799, at *2 (Del. Ch. July 19, 1990).

[97] *Thermo Fisher Sci. PSG Corp. v. Arranto Bio MA, LLC*, 2023 WL 2771509, at *17 (Del. Ch. Apr. 4, 2023) (internal quotation marks omitted).

[98] *See* D.I. 82 at ¶¶11–13.

**1.** **The construction of the sidewalk was within the scope of use granted through the Easement Agreement, however RHR has breached sections 2.1, 2.2, 2.4, 2.5, and 15.1.**

GWA insists that the Easement Agreement did not provide for the construction of sidewalks running the entire length of W. 37th St..[99] The plain language of the Easement Agreement provides for the construction of sidewalks when it specifies its use for the ingress and egress of pedestrians.[100] I find this language to be unambiguous considering the Easement Agreement also grants RHR the express right to construct improvements onto the easement area.[101]

Even if this Court were to look to extrinsic evidence to aid in the interpretation of the parties' intent for the scope of use of the granted easement, the facts and circumstance surrounding the execution of the Easement Agreement imply that a sidewalk was within its scope. GWA received a copy of the DVA which placed them on notice of RHR's intention of building the sidewalks to satisfy the needs of BHCA.[102] RHR entered into the Easement Agreement to construct the necessary items that were demanded in the DVA, including an access point "for the purpose of

---

[99] D.I. 93 at 4; JX 101 at 14.

[100] JX 32 at §2.1.

[101] JX 32 at §2.2 ("The RHR Parcel Owner shall have the right, at its sole cost and expense, to install, construct, use, connect, maintain, repair, and replace such improvements on the Easement Area . . . as are necessary to connect the RHR Parcel to the public right of way identified as '37th Street' on the RHR Plan[.]").

[102] JX 22; JX 25; Tr. 314:4–7.

facilitating pedestrian and vehicular access" which includes the construction of a sidewalk.[103] The construction of the sidewalks in addition to the second entryway does not constitute a breach because sidewalks were contemplated within the Easement Agreement.

Section 2.1 of the Easement Agreement, read with the physical description of the easement area outlined in the exhibits to the agreement, indicates that RHR was only permitted to construct the sidewalk within the easement area.[104] The sidewalk was constructed outside the designated easement area and onto GWA Property in multiple sections, in breach of the Easement Agreement.[105]

RHR agreed to abide by section 2.2 of the Easement Agreement which grants RHR the right to construct improvements on the easement provided "all work in connection with the easement area be done . . . in accordance with all applicable laws, regulations, and standards[.]"[106] Section 2.5 also states that RHR is "liable to the Shopping Center Parcel to obtain and continuously maintain, at its sole cost and expense, all certificates, approvals, permits, licenses and other consent respecting

---

[103] Tr. 488:13–20; Tr. 489:2–22.

[104] JX 32 at §2.1; JX 32, Ex. A–C.

[105] Tr. 287:10–22; Tr. 354:16–355:12; Tr. 422:24–423:23 (referencing JX 29); Tr. 426:12–427:2 (referencing JX 44); *see also* JX 101.

[106] JX 32 at §2.2.

the Easement Area that are required[.]"[107] The Defendants did not obtain the appropriate certificates, approvals, permits, licenses, or other consent respecting the construction of the side walk, which contravenes its responsibilities under sections 2.2 and 2.5.[108] The Defendants claim that they sought to get the necessary paper work for construction but no government agency would review the plans but provided insufficient evidence to prove this as fact while GWA provided testimony that revealed that an entrance permit was necessary.[109] RHR therefore breaches sections 2.2 and 2.5 of the Easement Agreement for failing to fulfill the necessary permitting and legal requirements in the construction on GWA's property.

RHR agreed in section 2.4 of the Easement Agreement that "prior to any entry upon the Easement Area . . . and prior to any work being performed . . . RHR shall provide to GWA . . . plans and specification for the Easement Area Improvements and RHR's plans for the installation and maintenance thereof, for GWA's prior

---

[107] .JX 32 at §2.5.

[108] D.I. 82 at ¶B18; Tr. 325:19–327:1 (referencing JX 22, Ex. B); Tr. 424:19–425:15 (referencing JX 44); *see also* D.I. 10 at ¶25 ("it is admitted only that Defendants had the sidewalk and curbing installed without a performance or payment bond, without permits, and without general liability insurance naming GWA as an additional insured[.]").

[109] D.I. 95 at 18–19; JX 104 at 10; Tr.190:4–12 ("I believe DelDOT might have treated this as a commercial entrance permit, even though you were coming from a private parcel to another private parcel, but you're interacting with this corridor that has been designated for access. So, it's conceivable that DelDOT might have required a commercial entrance permit for that.").

approval[.]"[110] RHR, in violation of this provision, did not provide GWA with the required documents, or seek GWA's approval, before the construction of the improvements on the easement area.[111] Section 15.1 of the Easement Agreement requires that RHR procure and maintain insurance for the duration of the agreement.[112] RHR did not originally obtain the insurance required under section 15.1 of the Easement Agreement.[113]

In sum, RHR breached the Easement Agreement for constructing the sidewalks outside the easement area, not requesting GWA's approval before the start of the construction, and not getting the necessary insurance or documentation to begin construction.

### 2. RHR is no longer able to cure because its' reasonable opportunity to do so has passed.

Under section 7 of the Easement Agreement breaching parties are entitled to the reasonable opportunity to cure a breach after written notice was given to them of the breach.[114] Section 7 also provides, "[i]n the event of uncured breach of this

---

[110] JX 32 at §2.4.

[111] D.I. 82 at ¶B21 ("After the execution of the Easement Agreement, neither RHR, LCC, nor the City contacted GWA prior to the installation of the sidewalks and curbing to expressly state that the sidewalks and curbing were going to be installed."); Tr. 29:3–18.

[112] JX 32 at §15.1.

[113] Tr. 342:7–20; D.I. 10 at ¶25 ("it is admitted only that Defendants had the sidewalk and curbing installed . . . without general liability insurance naming GWA as an additional insured[.]").

[114] JX 32 at §7.

22

Agreement by the RHR Parcel Owner, it is expressly acknowledged and agreed that, given the subject matter and consideration involved hereunder [GWA] shall be entitled to all remedies available at law or in equity[.]"[115] The plain language of this provision shows that GWA is entitled to broad legal and equitable remedies if a breach of the agreement is not cured within a reasonable amount of time after notice has been given.[116] On December 23, 2022, GWA sent a letter to RHR informing them of their breach of sections 2.1 and 2.5 and requesting RHR cure the breach within 30 days through the immediate removal of all sidewalks and other improvements improperly installed.[117] GWA gave notice of all of the breaches to the Easement Agreement on April 27, 2023 in a letter labeled "Notice of Termination" informing the Defendants that unless they comply with the requests of the letter within 7 days they would "seek any other remedy to which GWA is entitled under the Agreement."[118]

The notice of breach in December 2022 for sections 2.1 and 2.5 and the notice sent in April 2023, the latter of which came almost a full 10 months before GWA filing the complaint that began this action, provided RHR with sufficient notice and

---

[115] JX 32 at §7.

[116] JX 32 at §7; *see also Akorn, Inc. v. Fresenius Kabi AG*, 2018 WL 4719347, at *81 (Del. Ch. Oct. 1, 2018) (interpreting an opportunity to cure provision in a contract based on the plain language of the provision).

[117] JX 52.

[118] JX 62.

a reasonable opportunity to cure any defective conduct in relation to the Easement Agreement.[119] RHR has not cured a breach pursuant to section 2.1 relating to the sidewalk's encroachment on GWA's land and is thus in breach of this section of the Agreement.[120]

RHR offers to retroactively cure its deficiencies under sections 2.2 and 2.5 of the Easement Agreement by filing for the proper legal documentation required for the construction it has performed on the property.[121] RHR has had a reasonable opportunity to perform this cure since being given notice 10 months before the start of this litigation but did not do so.[122] RHR has therefore breached sections 2.2 and 2.5.[123]

RHR claims to have cured its breach of section 2.4 when it provided GWA with the plans for the easement area improvements in discovery for this matter.[124] This is not sufficient to cure RHR's breach as it cannot solve its deficiency in not seeking GWA's approval of the plans and permission to begin construction in the

---

[119] JX 53; JX 62.

[120] JX 32 at §2.1.

[121] D.I. 95 at 20–21.

[122] JX 62.

[123] JX 32 at §§2.2, 2.5.

[124] D.I. 95 at 18.

first place. Despite eventually providing the plans, RHR breached section 2.4 of the Easement Agreement by not providing the plans in advance for GWA's approval.[125]

RHR argues that GWA has not proven any damages in relation to the section 15.1 breach and RHR has since cured its breach on March 18, 2024, when RHR's Counsel sent GWA's counsel a certificate of insurance dated March 13, 2024, after the complaint was filed, naming GWA as an additional insured.[126] GWA argues it gave notice of all of the breaches to the Easement Agreement on April 27, 2023, yet RHR did not make any attempt to cure this breach until almost a year later and after litigation already commenced.[127] This is outside the reasonable opportunity to cure and therefore RHR had breached section 15.1.

## B. The City is not liable to GWA for breach of contract.

The plain language of the assignment explicitly grants the City rights in relation to the Easement Agreement and not obligations.[128] There is no language within the assignment that indicates the City is required to take any action to cure on RHR's behalf, and there was no evidence presented at trial that the City and RHR's intention when entering into the agreement was to place an obligation onto the

---

[125] JX 32 at §2.4.

[126] D.I. 95 at 18; JX 84.

[127] JX 62 at 2–3.

[128] JX 41.

City.[129] The assignment states specifically that "[i]n the event that Assignee exercises any of its rights under this Assignment, Assignee shall promptly provide Notice to Assignor[,]" and also required RHR as the assignor to provide a representation and warrantee that the City "has no obligation to GWA other than as expressly set forth in the Easement[,]" indicating the non-obligatory nature of the rights being afforded to the City.[130] The Assignment agreement does not create any kind of enforceable duty owed by the City, the only right it creates is that which is in the hands of the City to be *able* to fulfill, not to be *obligated* to fulfill, certain terms of the Easement Agreement on RHR's behalf. So, despite the City's heavy involvement with the parties, execution of the Assignment, and insistence on entrenching itself with property outside its boundaries, I do not find the City liable to GWA under the Assignment agreement to cure RHR's breaches of the Easement Agreement.

## C.  GWA cannot terminate the Easement Agreement.

"A party is excused from performance under a contract if the other party is in material breach thereof."[131] Conversely, "a slight breach by one party, while giving rise to an action for damages, will not necessarily terminate the obligations of the

---

[129] JX 41 at §§2.1.1–2.1.3 (using the language "shall have the right to"); *see* Tr. 507:3–20.

[130] JX 41 at §§2.2.3, 3.2.

[131] *BioLife Sols., Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003).

injured party to perform under the contract."[132] In determining whether a breach is material, the Court considers five factors:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account of all the circumstances including any reasonable assurances; [and] (e) the extent to which behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.[133]

The substantial compliance "standard is 'necessarily imprecise and flexible' and must be 'applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances.'"[134]

Here the Easement Agreement provides specifically for GWA to terminate the agreement in the event of RHR's breach of the allotted period for certain construction.[135] Section 6 of the Easement Agreement states:

> RHR shall develop the RHR Parcel and construct improvements thereon in order to lease and manage upscale, market-rate multifamily

---

[132] *Murphy Marine Servs. of Del., Inc. v. GT USA Wilm., LLC*, 2022 WL 4296495, at *15 (Del. Ch. Sept. 19, 2022) (quoting *Level 4 Yoga, LLC v. CorePower Yoga, LLC*, 2022 WL 601862, at *27 (Del. Ch. Mar. 1, 2022)).

[133] *LPPAS Representative, LLC v. ATH Hldg. Co.*, 2023 WL 3197819, at *16 (Del. Ch. May 2, 2023) (quoting Restatement (Second) of Contracts §§241(a)–(e)).

[134] *Id.* (quoting Restatement (Second) of Contracts §241)).

[135] JX 32 at §6.

housing and that the RHR Parcel shall continuously be used primarily for such purpose throughout the term of this Agreement. RHR further represents that the commencement of the work relating to the construction and installation of the Easement Area Improvement will be completed no later than thirty-six (36) months from the date of this Agreement. In the event that the Easement Area improvements are not completed within thirty-six (36) [months] from the date of this Agreement, the Shopping Center Parcel Owner shall have the right to terminate this Agreement as of the expiration of such 36-month period.[136]

That period required the construction on the easement to be completed by April 22, 2023.[137] The Parties argue whether completion of the construction includes RHR receiving all necessary permitting and legal requirements in relation to the construction and RHR completing its overall construction of the apartment buildings, or if it simply requires the material completion of construction of the improvements on the easement areas.[138] I am moved towards the latter. In reading the provision it specifically provides for the "construction of and installation of the Easement Area Improvement," which does not include any language about appropriate paperwork, only the physical act of installation and construction, and does not reference the preceding sentence in a way that indicates it implies the RHR apartment construction must be completed in this time frame.[139]

---

[136] *Id.*

[137] *Id.*

[138] D.I. 93 at 37; D.I. 95 at 9–12.

[139] *See* JX 32 at §6.

The construction on the easement area, including the entrance, curbing, sidewalks, and ramps, were completed no later than June 5, 2022, well within the designated 36-month period.[140] Although the parties dispute whether the construction is completed because the topcoat still must be put on the relocated entrance, testimony showed that the topcoat is traditionally added after all the improvements are complete because construction vehicles could damage the final product.[141] Therefore, the lack of a topcoat does not change my assessment on whether the construction was complete.

The construction required for the easement area is sufficiently completed such that the lack of topcoat would not deprive GWA of the benefit, the additional access point, it reasonably expected.[142] If RHR fails to complete this construction in full they are likely to be able to be compensated for the cost to complete it themselves if they so choose, but it is also likely that RHR will cure this defect.[143] RHR is likely to take a loss on the construction if the Easement Agreement is completely terminated, as it would no longer benefit from the sidewalk it paid to build and may risk having to pay for its removal after it substantially completed its obligations for

---

[140] JX 32 at §6; D.I. 82 at ¶B17.

[141] Tr. 323:7–19; Tr. 388:22–389:13.

[142] Restatement (Second) of Contracts §241(a); Tr. 447:14–448:1.

[143] Restatement (Second) of Contracts §241(b), (d); Tr. 323:7–19; D.I. 95 at 10.

construction under the agreement.[144] I therefore cannot find that the lack of topcoat to be a material breach to completion of construction on the easement areas such that it justifies the termination of the easement agreement.

As for the breaches of sections 2.1, 2.2, 2.4, 2.5, and 15.1, I do not find they meet the muster necessary to justify termination. GWA does admittedly lose benefits incurred from these clauses, including RHR's responsibility for obtaining proper documentations for construction, insurance policy, and zoning requirements.[145] GWA also loses the benefit of being able to approve the construction plans and have the sidewalk constructed in the designated easement area.[146] These losses can be properly remedied through monetary damages. RHR stands to lose far more if the Easement Agreement is terminated by being forced to bear the cost of the construction on the easement area that would no longer exist and would greatly affect RHR's development on the land it purchased.[147] RHR has conducted itself in good faith and has offered to cure in the areas it can, specifically in the documentation required for the new structures it built on GWA's property.[148]

---

[144] Restatement (Second) of Contracts §241(c), (e).

[145] JX 32 at §§2.1, 2.2, 2.5, and 15.1.

[146] JX 32 at §2.4.

[147] *See* JX 109 (quoting the cost of removal of the sidewalk at $27,000).

[148] *See* D.I. 95 at 20.

I also find it necessary to note the primary purpose of the Easement Agreement is to provide RHR with access onto GWA's property and to create a second entry point for pedestrian and vehicular access, and in consideration of that RHR must pay $25,000 and then $2,000 monthly.[149] RHR substantially completed the improvements on the easement area and has not missed a single payment even with the commencement of this litigation.[150] Although RHR has breached multiple terms of the Easement Agreement, I still do not find them to amount to a substantial breach such that it would justify the termination of the Easement Agreement. I therefore do not find any of RHR's breaches to the agreement considered individually or collectively to be substantial enough to justify GWA's complete termination of the Easement Agreement.[151] Accordingly, GWA's request for quiet title is denied.

In short, the Plaintiff has not proven substantial breach of the Easement Agreement such that they are able to terminate the contract. There is no cloud upon their title, since they voluntarily entered the agreement, RHR continues to pay, and

---

[149] JX 32 at §§2–3.

[150] Tr. 55:1–6.

[151] *See DeMarie v. Neff*, 2005 WL 89403, at *4 (Del. Ch. Jan 12, 2005) (quoting *Saienni v. G & C Cap. Gp., Inc.*, 1997 WL 363919, at *3 (Del. Super. May 1, 1997)) ("Not all breaches will authorize the other party to abandon or refuse further performance. To justify termination, 'it is necessary that the failure of performance on the part of the other go to the substance of the contract.'").

they have no right to terminate based on these breaches to the agreement. GWA is not entitled to their claim for quiet title.

**D.     The sidewalk constructed by RHR under the Easement Agreement did trespass onto the GWA Property.**

"The elements of trespass, a strict liability offense, are as follows: (1) the plaintiff must have lawful possession of the property; (2) the defendant must have entered onto the plaintiff's land without consent or privilege; and (3) the plaintiff must show damages."[152] "Any unlawful entry upon another's land constitutes a trespass, and the law implies damages for such a trespass, but the amount depends upon the damages actually done."[153] The Delaware Supreme Court adopts the Restatement (Second) of Torts definition of possession as including someone who "is in occupancy of land with intent to control it[.]"[154]

There are portions of the sidewalk that were constructed onto GWA's land outside both the easement area and the 26 foot right of way, and these portions do constitute a continuing trespass.[155] The issue this Court must address is whether the

---

[152] *Kuhns v. Bruce A. Hiler Del. QPRT*, 2014 WL 1292860, at \*19 (Del. Ch. Mar. 31, 2014) (quoting *O'Bier v. JBS Const., LLC*, 2012 WL 1495330, at \*2 (Del. Super. Apr. 20, 2012).

[153] *Id.* at \*2.

[154] *State ex rel. Jennings v. Monsanto Co.*, 299 A.3d 372, 388 (Del. 2023) (quoting Restatement (Second) of Torts §157).

[155] *See Jagger v. Schiavello*, 93 A.3d 656, 660–61 (Del. Super. 2014) ("As to continuing trespass, such a claim occurs when the defendant tortiously places or erects a structure or

constructed sidewalks on the 26 foot right of way identified here as W. 37th St. and the 10-foot construction easement constitute a trespass. RHR argues that the sidewalk that was built on these portions are not a trespass because the W. 37th St. is dedicated to public use, and the scope of the construction easement allows for the construction of the sidewalk.[156]

W. 37th St. is a private road dedicated to public use, that has been dedicated as such since the 1990s.[157] W. 37th St. a 26-foot dedicated right of way, which at the time of the sidewalk construction had not been accepted into state maintenance.[158] The street despite not being accepted into the state maintenance system is "eligible for improvements funded by the Community Transportation program" including the construction of a sidewalk.[159] DelDOT transferred to the City maintenance rights in the Maintenance Agreement entered into in December 2023.[160] Along W. 37th St.

---

other thing on the land of another person and constitutes a trespass for the entire length of time such thing is wrongfully on that land."); JX 101, Ex. 10-B, C (indicating a portion of the sidewalk built onto the construction easement and then, at the southern end, a portion of the sidewalk build onto unencumbered GWA Property).

[156] D.I. 95 at 22–28.

[157] Hastings Dep. Tr. 29:2–13; *see also* Hastings Dep. Tr. 29:16–21 ("Dedicated to public use means that a private road can be used by the general public without the need to live there or own the property.").

[158] JX 104 at 4–5; D.I. 83 at 1; Tr. 202:23–203:7; Hastings Dep. Tr. 71:3–72:9.

[159] 2 Del. Admin. C. §2309-8.7.2; *see also* Hastings Dep. Tr. 85:23–86:11.

[160] JX 83.

sits a construction easement, ten feet to either side of the road.[161] A construction easement sometimes only grants the state the ability to occupy the space with the movement of equipment or the storage of materials when construction is occurring on the road.[162] A permanent construction easement will grant the State the right to make improvements, such as construct a sidewalk.[163]

Notably both the right of way and the construction easement grant DelDOT and/or the City a right of access to GWA's property.[164] However, RHR is not DelDOT or the City, and although they seemingly have the City's support in the construction of the sidewalk, it does not change the fact that when they underwent construction, they did so under private interests and not at the express direction of the holder of the access rights to the right of way and the construction easement.

---

[161] JX 104 at 3–4; JX 94; JX 96; JX 97; JX 98.

[162] Rudy Dep. Tr. 103:10–105:13 ("It's a construction easement which allows operation, movement of equipment, of material. I can occupy that space while I build that reduced area road or do what improvements I need to do in there.")

[163] Rudy Dep. Tr. 106:15; Donlon Dep. Tr. 104:13–24 (indicating uncertainty as to what type of construction easement was present here but that "currently DelDOT asked for a permanent easement on most jobs that run adjacent to rights-of-way for them to construct sidewalks or pedestrian paths[.]").

[164] Rudy Dep. Tr. 112:14–17 ("Q. Okay. So fair to say that DelDOT is the one who has rights under the permanent construction easement?  A. Yes."); Hastings Dep. Tr. 86:23–87:7 (discussing DelDOT's authority on the public right of way stating that "[t]hrough it being dedicated to public use, [DelDOT has] the authority to go on and do certain types of improvements and we're not required to get that underlying property owner to agree to them. Typically, in a neighborhood the people want whatever it is we're doing, but we don't have that requirement.").

Therefore, I find RHR to be liable for trespass, and the existence of DelDOT or the City's right of access for the purpose of improvement does not change GWA's possession and ownership of the land and does not bear effect on RHR's right of access, or in this case lack thereof, onto GWA's property.

**E.** **I do not find it appropriate at this time to order the sidewalk be removed, and I decline at this time to address Plaintiff's request for injunctive relief.**

To obtain a permanent injunction, a party must show: "(1) actual success on the merits of the claims; (2) that the plaintiff will suffer irreparable harm if injunctive relief is not granted; and (3) that the harm to the plaintiff outweighs the harm to the defendant if an injunction is granted."[165] Proof of these three elements is by "the preponderance of the evidence," which requires "proof that something is more likely than not."[166]

GWA has not succeeded in its claim to carry out termination of the Easement Agreement such that this Court can order the removal of the sidewalk in its entirety. As for the encroaching portions, after weighing the harm to the parties in granting the requested injunctive relief to remove the encroaching portions of the sidewalk, I

---

[165] *Benner v. Council of Narrows Ass'n of Owners*, 2014 WL 7269740, at *11 (Del. Ch. Dec. 22, 2014) (citing *Examen, Inc. v. VantagePoint Venture P'rs 1996*, 2005 WL 1653959, at *2 (Del. Ch. July 7, 2005)).

[166] *Rosenbaum v. CytoDyn Inc.*, 2021 WL 4775140, at *13 (Del. Ch. Oct. 13, 2021); *McKenna v. Singer*, 2017 WL 3500241, at *13 (Del. Ch. July 31, 2017) (quoting *Agilent Techs., Inc. v. Kirkland*, 2010 WL 610725, at *13 (Del. Ch. Feb. 18, 2010)).

am not inclined to order the sidewalk be removed at this time. The cost of removing portions of the sidewalk that are not within the easement area would be great.[167] GWA has presented little evidence of any actual harm it has incurred or will incur outside the speculative testimony of its risk of potential liability, which RHR has both taken action to attempt to mitigate and has expressed a willingness to cure any further issues regarding the maintenance responsibility moving forward.[168] The balance of the harm tips heavily in favor of the Defendants.[169]

Rather than grant the injunctive relief requested, I direct these parties to engage in good-faith negotiations regarding a workable settlement for the portions of the sidewalk that sit outside the easement area, including agreements to handle the future maintenance and liability responsibilities that align with the needs of all parties involved. Depending on the results of these settlement discussions, parties are to return to the Court with either a joint form of order or separate competing forms of order if the parties cannot come to an agreement.

---

[167] *See* JX 109.

[168] D.I. 95 at 18; JX 84; D.I. 95 at 20–21.

[169] *See New Castle Shopping LLC v. Trs. of New Castle Common*, 2024 WL 4432778, at *7 (Del. Ch. Oct. 7, 2024) (ORDER) (finding that although the law implies damage for trespass, injunctive relief was not appropriate where the defendant has already paid a significant amount in remediation efforts and the plaintiff has presented little evidence as to actual harm from the trespass).

## F. Attorneys' Fees and Costs

Delaware follows the American rule which states that "[l]itigants are normally responsible for paying their own litigation costs."[170] An exception to this rule is the bad faith exception, which requires the party seeking to shift fees to satisfy "the stringent evidentiary burden of producing 'clear evidence' of bad faith."[171] None of the parties have engaged in conduct that would justify an award of bad faith fee shifting.

Another "exception to the American rule 'is found in contract litigation that involves a fee shifting provision.' When a contract contains a fee shifting provision, Delaware courts will enforce that provision."[172] This Court must interpret fee shifting provisions as it would any contract provision, by interpreting them according "to their plain meaning."[173]

Section 7 of the easement agreement states, "The RHR Parcel Owner shall reimburse the Shopping Center Parcel owner for any and all reasonable costs and expenses, including reasonable attorney's fees, which the Shopping Center Parcel

[170] *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

[171] *Dearing v. Mixmax, Inc.*, 2023 WL 2632476, at *5 (Del. Ch. Mar. 23, 2023) (ORDER) (quoting *Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005)).

[172] *GB-SP Hldgs., LLC v. Walker*, 2024 WL 4799490, at *24 (Del. Ch. Nov. 15, 2024) (quoting *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 280 (Del. 2022)) (internal citation omitted).

[173] *Bako Pathology LP*, 288 A.3d at 281 (quoting *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665, 683 (Del. 2013)).

owner may directly incur in connection with the enforcement of this Agreement."[174] Considering this, I find it appropriate to award the fees requested by GWA under section 7 of the Easement Agreement.[175] LCC and the City do not owe GWA fees under section 7, as they are not the RHR parcel owner.

RHR has acknowledged that GWA is entitled to the reimbursement of some legal fees but argues the additional claims are beyond what was agreed to in the agreement.[176] The enforcement of the agreement included, in part, making claims relating to the construction of the sidewalk within the designated area; therefore I find the trespass claims are relating to and arising out of the enforcement of the agreement.[177] Plaintiff shall submit an affidavit in accordance with Court of Chancery Rule 88, to which Defendant RHR may file a response within twenty days after filing.

## III.  CONCLUSION

For these reasons, I find that although RHR has breached the Easement Agreement, GWA does not have the right to terminate the agreement because the breaches are not material to the substance of the agreement which has been substantially fulfilled by RHR. The Easement Agreement remains in place and RHR

---

[174] JX 32 at §7.

[175] *Id.*

[176] D.I. 95 at 31.

[177] JX 32 at §2.1; JX 32, Ex. A–C.

maintains all rights of access afforded therein. The City is not liable for breach of contract.

I do not find it appropriate to order the encroaching portions of the sidewalk be removed at this time and instead encourage the parties to engage in good-faith negotiations to reach a settlement that addresses the encroachment, maintenance obligations moving forward, and reconciliation of any lacking documentation required for the construction on GWA's property.

GWA is entitled to monetary damages representative of any harm imposed from RHR's breach of contract. The record was not sufficiently developed for the Court to make a determination on the amount of monetary damages GWA is entitled to. The parties should consider this in their settlement discussions on the issues discussed above. If the parties are not able to come to an agreement, further briefing and documentation on damages may be required.

Absent the filing of exceptions, the plaintiff shall file a status report within thirty days. This is my final report, and exceptions may be filed under Court of Chancery Rule 144.[178]

---

[178] *See* Ct. Ch. R. 144(d)(1) (In "[a]ctions that are not summary or expedited… [a] party taking exceptions must file a notice of exceptions within 11 days of the date of the Final report or Draft Report.").